[Importing and Exporting Company of Georgia *v.* Locke.]

he became satisfied that they were sound. He was not liable to pay, until this time arrived. It never could arrive, if the horses, or one of them, was diseased. I think this the proper construction of this singular instrument. In this view of it, the court below erred in the charge given which was excepted to. And as this will necessarily work a reversal of the judgment of the court below, and furnish an exposition of the written agreement on another trial, I deem it unnecessary to discuss the charges which were asked and refused. The questions dependent on them may not again arise.

The judgment of the court below is reversed, and the cause is remanded for a new trial.

# Importing and Exporting Company of Georgia *v.* Locke *et al.*

## Action on Equitable Attachment Bond.

1. *Foreign corporation; validity of charter.* — An action brought by a foreign corporation, organized in Georgia, in 1863, under a general law enacted prior to 1861, cannot be defeated by a plea, which avers that the corporation was organized for the purpose of running the blockade, in violation of the laws of the United States, and that its charter was obtained through the action of a rebel court.

2. *Same; action by.* — As a general rule, a foreign corporation may prosecute a suit in the courts of this State, whenever the individual corporators would be permitted to do so; though the court might withdraw its aid, on clear proof of the treasonable character of the corporation.

3. *Forfeiture of charter.* — A corporation is not to be deemed dissolved, or its charter forfeited, by reason of any misuser or non-user of its franchises, until the default has been judicially ascertained and declared; and this can only be done by the courts of the state by which its charter was granted.

APPEAL from the City Court of Eufaula.

Tried before the Hon. E. M. KEILS.

The record in this case has been lost. Nothing but the opinion has come to the hands of the Reporter.

J. M. McKLEROY and SHORTER & BROTHER, for appellant.

F. M. WOOD and BUFORD & SEALS, *contra.*

B. F. SAFFOLD, J. — The appellant sued the appellees, to recover damages for breach of an attachment bond executed by them, in wrongfully suing out the attachment. The breach assigned is, that they failed to prosecute said writ of attachment to effect. The defendants pleaded the general issue, *nul tiel corporation*, and a special plea that the plaintiff, an alleged foreign corporation, was organized in the State of Georgia, during the late rebellion, for the purpose of running the blockade

imposed by the United States against the ports of Georgia and other states of the so-called Confederate States, and obtained its charter through the action of a rebel court of Georgia. A demurrer to this last plea was overruled.

The evidence shows, that the incorporation of the plaintiff was effected in 1863, by an order of the superior court of Chatham county, Georgia, granting the petition and declaration of corporators, setting out that they had formed the association for the encouragement of direct trade with foreign countries, and with the purpose of exporting and importing goods, wares, and merchandise from and to foreign countries, in vessels propelled by steam and sail; and that the principal office and place of business was to be Savannah, in Chatham county, Georgia, and they desired incorporation for thirty years. The defendant, Locke, subscribed $5,000 to the capital stock of the company, which he paid in Confederate currency. The company had never declared any dividend; and soon after the war, Locke, with others, seized eighty bales of cotton at the wharf in Eufaula belonging to the company. This cotton has never been returned, but was converted to their own use by those who seized it. The inducement to the organization of the company was, chiefly, the present advantage of running the blockade. The only evidence of other intention is the term of years for which the charter was obtained. It does not appear by direct testimony whether the company continued to exist or not after the war for any other purpose than the prosecution of this suit.

The court charged the jury, that if the plaintiff was incorporated under the laws of Georgia, in 1863, and was organized for the purpose of running the blockade, and importing goods into the Confederate States in aid of the rebellion, the incorporation is void. It refused to charge, that if the $5,000 in Confederate money paid to the plaintiff by the defendant, Locke, in 1863, constituted the only demand which he had upon the company at the time he sued out the equitable attachment, the attachment was wrongfully sued out.

The controlling question is, whether, at the time the attachment was issued and levied, the plaintiff was a valid existing corporation, capable of sustaining the damage complained of. The case is restrainedly presented. We are not informed of the grounds upon which the attachment was issued. The appellant is a non-resident, which is one ground for its issue. In *Kirksey* v. *Jones* (7 Ala. 622), it was said to be a complete defence, if the defendant is able to show that any one of the causes existed which would warrant him in resorting to this process. In *O'Grady* v. *Julian* (34 Ala. 88), the *onus* is said to be on the plaintiff, to prove the falsity of the affidavit on

which the attachment was sued out, and not on the defendant to prove its truth. On the other hand, the appellee seems not to have made any attempt to prove that he had a debt against the company. His bill in equity was dismissed without prejudice, but we do not know on what grounds. In *Sackett & Shelton* v. *McCord*, 23 Ala. 851, a judgment against the plaintiff in attachment, by itself, was not considered conclusive, in a subsequent suit on the bond, that the attachment was wrongfully sued out. But, if he had no debt, the condition of the bond was broken. *Lockhart* v. *Woods*, 38 Ala. 631.

In this state of the case, as the appellee pleaded the corporate character of the plaintiff, setting out the manner in which it obtained its charter, and alleging the illegal purpose of the original corporators in its creation, as a reason why it should not be permitted to maintain this suit, we will consider the merits of that allegation. We may justly infer from the recitals of the plea, that the company was not incorporated by a special act of the Georgia legislature, but under a general law applicable generally to private corporations. We find such a law in the Code of Georgia, of date 1843. Such an act was not necessarily affected by the insurrectionary *status* of Georgia at the time this company was organized. The proposed business of exporting and importing goods is not illegal in itself. Therefore, the simple organization of such a company, under a general law of date prior to the rebellion, had no element of illegality in it. Did the illegal intention of the original corporators invalidate the corporation from its inception, or dissolve it after its formation? It was expected that other persons would subsequently become stockholders, as did the appellee. It was possible that these later ones might override the illegal intention of the charter members, and wait until the blockade was removed. The infraction of the blockade laws would have been ground for forfeiture, and cause of invalidity of contracts affected with the illegal purpose. But I think it would not, of its own force, have dissolved the company, or rendered it invalid from the beginning.

Chancellor Kent says, " The old and well established principle of law remains good, as a general rule, that a corporation is not to be deemed dissolved, by reason of any misuser or nonuser of its franchises, until the default has been judicially ascertained and declared." 2 Kent's Comm. p. 376 ; *Peter* v. *Kendall*, 6 Barn. & Cressw. 703 ; *Slee* v. *Bloom*, 5 Johns. Ch. R. 379 ; 9 Cranch, 51 ; 4 Wheat. 698. In *The King* v. *Amery* (2 Term Rep. 515), it was held that, though a corporation may be dissolved, and its franchises lost, by non-user or neglect ; yet it was assumed, as an undeniable proposition, that the default was to be judicially determined in a suit instituted for the

[Importing and Exporting Company of Georgia *v.* Locke.]

purpose. In *Trustees of Vernon Society* v. *Hills*, 6 Cowen, 23, it is said, no advantage can be taken of any non-user or mis-user on the part of a corporation, by any defendant, in any collateral action. *All Saints Church* v. *Lovett*, 1 Hall (N. Y), 191; *Canal Co.* v. *Railroad Co.* 4 Gill & Johns. 1; *Cooper* v. *Curtis*, 30 Maine, 488. This doctrine seems to be indispensable to the protection of innocent persons, who have dealt with the corporation. It is necessary to the existence of a corporation, which, otherwise, would be consumed in repeated contests about its right of existence.

The courts of Alabama have not jurisdiction to adjudge a forfeiture of a Georgia corporation. *Society, &c.* v. *New Haven*, 8 Wheat, 464. A corporation, created in another state, may sue in this State; and to establish its existence, a copy of its charter, and parol proof of its being in operation, will be sufficient. *Lucas* v. *The Bank of Georgia*, 2 Stew. 147. The appellee shows in his plea the incorporation of the appellant. Its existence in 1868 is shown by his suit against it, and his bond upon which he initiated the ˌsuit. There is nothing in this suit tending to show that its subject-matter grew out of any illegal transaction. We cannot assume that a sister state would allow a treasonable corporation to exist under its authority. If such a case should be indubitably proved, it might be the duty of our courts to withdraw their aid from the offender. As a general rule, a foreign corporation may, with safety and propriety, be allowed to prosecute a suit, when the corporators themselves would be permitted to do so.

As to the grant of the charter by a rebel court, we have repeatedly held, that the acts of our own courts during the war were not invalid, in matters of private and domestic interest.

With the reservation, that our judgment may not be decisive of the merits of this case, we hold that, as presented, the charge of the court in respect to the invalidity of the corporation is incorrect, and that the demurrer to the third plea ought to have been sustained. No error is shown in the refusal of the court to give the charge, that the attachment was wrongfully sued out, if the defendant's stock purchased with Confederate money constituted his only demand against the company. If he had the stock, with the consent of the company, and a cause of action accrued to him on account of it, the manner of paying for it is, most likely, indifferent.

The judgment is reversed, and the cause remanded.