187 So. 434

**ELLIS v. MUTUAL LIFE INS. CO. OF NEW YORK.**

**6 Div. 327.**

Supreme Court of Alabama.

Feb. 9, 1939.

Rehearing Denied March 30, 1939.

Wm. H. Ellis and Talbot Ellis, both of Birmingham, for appellant.

Douglas Arant and Bradley, Baldwin, All & White, all of Birmingham, and Louis W. Dawson, of New York City, for appellee.

THOMAS, Justice.

The suit in equity was by complainant as a member and policyholder of respondent, a mutual life insurance corporation, existing under the laws of New York, and qualified to transact its business in Alabama, and was so engaged in this state when notice was issued and suit brought. There is no question presented as to the sufficiency of service of process upon the respondent.

The bill of complaint avers that the suit is filed in behalf of complainant and all other persons similarly situated; and the object was to have declared illegal the allotment and distribution by the non-resident mutual insurance corporation of its divisible surplus as dividends for the year 1937 and years subsequent thereto, and to obtain a decree against the respondent for alleged dividends which complainant claims he was deprived of on account of the alleged illegal and unlawful distribution to other classes of policyholders.

It is thus averred: "Complainant shows unto this Court that for many years after the execution and delivery of the policy herein involved until, to-wit: the calendar year 1937 and as to the policy herein involved on, to-wit: the 24th day of November, 1937, the Respondent paid dividends on said policy on the same general basis that it paid other dividends and without making a deduction thereof because of disability benefits granted but that during said calendar year 1937 and in particular on November 24th, 1937 as to the policy here involved the Respondent, contrary to the terms of the aforementioned policy made an additional deduction which it by notice to its policyholders stated was because of alleged losses because of disability benefits granted. That said additional deductions during said calendar year 1937 were made on policies such as your Complainant's which contained the disability provisions and were not made on other similar policies of the respondent which did not contain disability provisions."

It is further averred that: " * * * on the policy here involved the annual dividend, notice of which was given Complain-

496

ant in the premium policy notice due November 24th, 1936, was in the sum of $11.-85, which your Complainant had the option of accepting in cash, or using for the purpose of an additional $29.00 paid up insurance or using toward payment of premium but that after the illegal and unlawful change whereby said dividends were reduced for the calendar year 1937 that the cash value of the dividend applied to said policy for said year was only $7.94 which your Complainant could take out at his option either in cash or which he could use for the purchase of additional paid up insurance in the sum of $19.00, or apply toward payment of premium." Paragraphs 7 and 8, Bill of Complaint.

The respondent filed several pleas challenging the jurisdiction of the court over the subject-matter of the suit because the courts of Alabama are without power to exercise visitorial powers over the respondent foreign corporation or interfere with the management of its internal affairs. The complainant interposed a demurrer challenging the legal sufficiency of the pleas to the jurisdiction. The trial court overruled the demurrer to the pleas to the jurisdiction, holding that the pleas were sufficient, and dismissing the bill. From the final decree dismissing the bill for want of jurisdiction the court over the subject-matter of the suit, this appeal was prosecuted, based on the ruling as the case was tried.

A statement of the pleading will be adverted to as follows: the complainant in his bill alleged in substance that on November 24, 1926, the respondent, a mutual life insurance corporation existing under the laws of the State of New York, executed and delivered to him in Alabama an ordinary policy of life insurance for the face amount of $2,000 with provisions for double indemnity in the event of accidental death and for benefits in the event of total and permanent disability. The entire policy was incorporated in the bill as an exhibit and supports the same. Grimsley v. First Ave. Coal & Lumber Co., 217 Ala. 159, 115 So. 90.

It was averred that no loan had been obtained on the policy; that all dividends thereon allotted by the respondent had been left with the respondent for the purpose of purchasing paid-up insurance in accordance with the terms of the policy, and that the total annual premium of $50.36 had been paid on the policy each year since its effective date.

The provisions relating to benefits in the event of total and permanent disability are contained in Section 3 of the policy. They are as follows:

"*Section 3. Benefits in Event of Total and Permanent Disability before Age 60.*

"*Total Disability.*—Disability shall be considered total when there is any impairment of mind or body which continuously renders it impossible for the Insured to follow a gainful occupation.

"*Permanent Disability.*—Total disability shall, during its continuance, be presumed to be permanent;

"(a) If such disability is the result of conditions which render it reasonably certain that such disability will continue during the remaining lifetime of the Insured; or,

"(b) If such disability has existed continuously for ninety days.

"*When Benefits become Effective.*—If, before attaining the age of sixty years and while no premium on this Policy is in default, the Insured shall furnish to the Company due proof that he is totally and permanently disabled, as defined above, the Company will grant the following benefits during the remaining lifetime of the Insured so long as such disability continues.

"*Benefits. (a) Increasing Income.*—The Company will pay a monthly income to the Insured of the amount stated on the first page hereof ($10 per $1,000 face amount of Policy), beginning upon receipt of due proof of such disability and increasing after sixty consecutive monthly payments have been made to one and one-half times such amount and after sixty further consecutive monthly payments have been made to twice such amount at which it shall remain while total and permanent disability continues.

"*(b) Waiver of Premium.*—The Company will also, after receipt of such due proof, waive payment of each premium as it thereafter becomes due during such disability.

"*Specified Disabilities.*—The entire and irrecoverable loss of the sight of both eyes, or of the use of both hands or both feet or one hand and one foot, will be considered total and permanent disability.

"*General Provisions.*—The Company may, before making any income payment or waiving any premium, require due proof of the continuance of total and permanent

disability, but such proof shall not be required oftener than once a year after such disability has continued for two years. If such proof is not furnished on demand or if it shall appear to the Company that the Insured is no longer totally and permanently disabled, no further income payments will be made or premiums waived.

*"Neither the dividends nor the amount payable in any settlement hereof shall be decreased because of Disability Benefits granted.* [Italics supplied.]

"If the Insured shall at any time so recover that the payment of Disability Benefits terminates and later shall furnish due proof that he has again become totally and permanently disabled, Disability Benefits shall be the same in amount and subject to the same conditions as if no prior disability had existed.'

"If the disability of the Insured shall be the result of insanity, income payments shall be payable to the beneficiary, if any, instead of to, the Insured.

"Any disability income payment which may become payable and which is unpaid at the death of the Insured shall be paid to the beneficiary.

"Disability Benefits shall not be granted if disability is the result of self-inflicted injury.

"The provision for Disability Benefits shall automatically terminate if the Insured shall at any time, voluntarily or involuntarily, engage in military or naval service in time of war outside of the continental limits of the United States of America and the Dominion of Canada.

"If requested in writing by the Insured, the Company will terminate the provisions for Disability Benefits by endorsement on this Policy.

"If the Insured attains the age of sixty years or if the provision for Disability Benefits terminates, the premiums payable after such age or such termination shall be reduced by the premium for such benefits."

Section 4 of the policy relating to annual dividends is as follows:

*"Section 4. Annual Dividends.*

"The share of the divisible surplus accruing on this Policy shall be allotted as a dividend annually on each anniversary of its date, the first such dividend being payable only if any premium due on the first anniversary be duly paid.

"At the option of the Insured, each such dividend shall be either:—

"1. Used to purchase a paid-up participating addition to the sum insured (without Double Indemnity or Disability Benefits), herein called dividend addition, which shall be automatically added on the date of allotment and will continue in force unless and until one of the other options be duly elected; or,

"2. Paid to the Insured in cash; or,

"3. Used toward payment of any premium if the remainder of the premium is duly paid; or,

"4. Deposited with the Company at interest within ninety days from date of allotment (called dividend deposit). Interest will be credited at such rate as may be determined by the Company, but never less than three per cent a year, and will be added to existing dividend deposits annually. Dividend deposits existing at the death of the Insured shall be then payable to the beneficiary.

"The Insured may at any time, provided there is no premium more than three months in default, surrender any dividend additions for the full reserve thereon or withdraw any accumulated dividend deposits.

*"Post Mortem Dividend.*—Upon the death of the Insured a cash dividend will be credited to this Policy for the fraction of the policy year elapsed before such death."

We have heretofore set out paragraphs seven and eight of the bill of complaint. Paragraphs nine and ten of the bill are as follows:

"Complainant further avers that the so called dividends are in effect nothing but the return to policyholders of the divisible surplus in the hands of the Respondent and that the first paragraph of Section 4 of said policy with reference thereto reads as follows: [Said § 4 of policy exhibited set out above].

"Complainant states that he is informed and believes and on such information and belief states that there are many hundreds of thousands of policyholders with policies similar to Complainant with the Respondent, said policyholders being scattered all over the United States and over various parts of the world; that they all have a common or general interest in the subject of this litigation; that their number or residence made it impracticable to bring them

all before this Court, which said policy-holder's dividends have thus been unlawfully reduced by the Respondent contrary to the terms of said policies and that they have been thus unlawfully and illegally deprived of their just portion of the divisible surplus of the respondent, distributed as it has been in the past under the designation of dividends; that there has been a large distributable surplus for the calendar year 1937, in the sum of, to-wit: $25,024,520.00; that same was distributed to others similarly situated to Complainant in an illegal and unlawful manner and that this suit is brought on behalf of Complainant and others similarly situated for a declaratory judgment ordering this Respondent to distribute said surplus, of which it is trustee, as required by the terms of said policies and other relief."

The prayer of the bill was:

" * * * that upon a final hearing hereof your Honor will construe the terms of said policy of insurance as to its disability feature and will enter a declaratory decree in substance adjudging: (a) That the distribution of the divisible surplus of Respondent during the calendar year 1937, in which distribution Complainant and others similarly situated were not given equal consideration and credit with the policy-holders not having disability provisions is illegal, contrary to the express terms of the policies issued and a breach of the provisions of said policies; (b) That said distributable surplus shall be distributed in the future ratably and equitably among policy-holders holding similar policies to complainant and that they shall not be discriminated against because of the fact that their policies also contain clauses providing for disability benefits.

"Complainant further prays that this Court will enter an order, judgment or decree in favor of this Complainant and all others similarly situated and against the Respondent for the amount of the dividends plus legal interest thereon already declared by respondent and illegally diverted from them by said discrimination contrary to the expressed terms of said contract."

The respondent duly filed pleas, challenging the jurisdiction of the court over the subject matter of the suit, as follows:

"(1) Now comes The Mutual Life Insurance Company of New York, the respondent in this cause, appearing specially for the sole purpose of filing this plea to the jurisdiction and for no other purpose whatsoever, and, for plea to the jurisdiction of this Court over the subject matter of the cause or causes set forth or attempted to be set forth in the bill of complaint filed herein, as last amended, says that this respondent is a foreign corporation duly organized and existing under the laws of the State of New York, having and maintaining its principal office in the City of New York, New York, and that the cause of action or controversy evidenced in and by the bill of complaint involved questions relating solely to the management of the internal affairs of the said foreign corporation and the exercise by this Court of visitorial powers over the said foreign corporation, all of which constitute matters over which the government and Courts of the State of New York have sole and exclusive jurisdiction.

"Wherefore, the premises considered, the respondent says that this Court has no jurisdiction over the subject matter of this suit and the respondent prays therefore that the bill of complaint filed herein as last amended be dismissed and that the respondent be allowed to go hence with its reasonable costs in its behalf expended.

"(2) Now comes The Mutual Life Insurance Company of New York, the respondent in this cause, still appearing specially for the sole purpose of filing this plea to the jurisdiction and for no other purpose whatsoever, and, for further plea to the jurisdiction of this Court over the subject matter of the cause or controversy set forth or attempted to be set forth in the bill of complaint filed herein as last amended, says that the respondent is a foreign mutual life insurance corporation duly organized by an Act of the Legislature of the State of New York approved April 12, 1842, and existing under the laws of the State of New York, having and maintaining its principal office in the City of New York, New York, a true copy of the charter and by-laws of the respondent, marked Exhibit (1), being attached hereto and made a part hereof; that both in the manner of its incorporation and in the carrying on of its corporate functions the respondent has fully complied with its charter and the laws of the State of New York; that the complainant as a holder of a policy issued by the respondent is by virtue thereof and the provisions of the respondent's charter a member of the respondent and bears no other relationship to the re-

spondent; that the acts of the respondent forming the basis of this suit as averred in the bill of complaint as amended affect the complainant solely in his capacity as such member of the respondent and not otherwise; that the cause of action or controversy evidenced in and by the bill of complaint as amended involves alleged rights of the complainant as such member of the respondent with respect to the determination of the amount of the divisible surplus of the respondent and the apportionment or allotment and payment of a share thereof as a dividend to the complainant as such member of the respondent; that the said cause of action or controversy involves questions relating solely to the management of the internal affairs of the respondent; and therefore that all the matters with respect to which the complainant seeks relief in this cause are matters over which the government and the Courts of the State of New York have sole and exclusive jurisdiction.

"Wherefore, the premises considered, the respondent says that this Court has no jurisdiction over the subject matter of this suit and the respondent prays therefore that the bill of complaint filed herein as last amended be dismissed and that the respondent be allowed to go hence with its reasonable costs in its behalf expended.

"(3) Now comes The Mutual Life Insurance Company of New York, the respondent in this cause, still appearing specially for the sole purpose of filing this plea to the jurisdiction and for no other purpose whatsoever, and, for further plea to the jurisdiction of this Court over the subject matter of the cause or controversy set forth or attempted to be set forth in the bill of complaint filed herein as last amended; says that the respondent is a foreign corporation duly organized and existing under the laws of the State of New York, having and maintaining its principal office in the City of New York, New York; that the respondent is authorized by the laws of the State of New York, and by its said charter (which by reference is hereby adopted and made a part hereof) to issue insurance upon the lives and the health of persons; and that both in the manner of its incorporation and in the carrying on of its corporate functions the respondent has fully complied with the laws of the State of New York.

"The respondent is a purely mutual company without capital stock and is engaged in the business of insuring lives upon the mutual plan. By the provisions of its charter all persons insured in the respondent become members thereof during the period that they remain insured by it. The complainant is a member of the respondent and bears no other relationship to it. The respondent's charter also provides:

" 'All the corporate powers of the said Company (the respondent) shall be exercised by a Board of Trustees, and such officers and agents as they may appoint.'

"The management of the respondent's business is conducted at its Home Office in the City of New York, New York, where its chief executives have their offices, where its Board of Trustees meets at monthly intervals, and where its assets are located and its principal records are kept.

"By Sections 83, 87, 89, 97, and 102 of the Insurance Law of the State of New York (copies of which are set forth in Exhibit 2 attached hereto and made a part hereof), the respondent is required on December 31st of each year to ascertain the surplus earned by it during that year, and, after setting aside from such surplus certain amounts (specially authorized for purposes not material here), it is required to apportion the remaining surplus equitably to all policies entitled to share therein, and in the absence of wrongdoing, mistake, or abuse of discretion, such apportionment by the respondent of its divisible surplus among its policies constitutes in legal effect an equitable apportionment thereof which is binding and conclusive upon all its members.

"During the period since the policy referred to in the bill of complaint as last amended was issued to the complainant the respondent has had assets of about $1,000,000,000 or more, with about 700,000 or 800,000 policyholders insured for approximately $4,000,000,000; has paid out in death, disability, and other policy claims nearly $1,000,000,000 and in dividends over $320,000,000, which dividends have been apportioned among approximately 800,000 policyholders in forty-eight states of the United States at the rate of from $25,000,000 to $45,000,000 a year.

"The ascertainment of the amounts to be so apportioned involved the consideration of millions of items and of many different and conflicting factors which have been determined by mathematical principles of great complexity; and in ascertaining

500

many of the elements going to compose those factors it has been necessary for the respondent to make determinations and decisions with respect to various facts and the mathematical formulae to be used in making such equitable apportionment of surplus, all of which has involved the management of the internal affairs of the respondent.

"The orderly, practical and equitable conduct and management of the internal affairs of the respondent require that the ascertainment of its divisible surplus from year to year and the apportionment thereof among all its policies' be stable and be determined by identical methods, principles, and factors, all of which have been examined and approved by the Insurance Department of the State of New York for more than thirty years last past, and the said methods, principles, and factors in their orderly, practical, and equitable application cannot be altered or modified at the instance or to the advantage of the complainant or any other members of the respondent.

"The respondent's determination of the amount of its divisible surplus and the equitable apportionment thereof for the year 1937 among its policyholders (including the complainant) have been made in strict accordance with the laws of the State of New York as construed by the highest Court of the State of New York.

"The determination of the amount of the divisible surplus of the respondent and the equitable apportionment of such divisible surplus among its policyholders are internal affairs of the respondent and as such are vested by the respondent's charter and the law of the State of New York in its Board of Trustees.

"The regulation and control of the conduct of the respondent's internal affairs is vested solely and exclusively in the legislative, judicial, and administrative branches of the sovereign State of New York.

"This Court should not grant the relief sought by the complainant because:

"(a) This Court is without jurisdiction to regulate, control, supervise, or exercise visitorial powers over the management of the internal affairs of the respondent;

"(b) This Court is without jurisdiction over the subject matter of this suit;

"(c) To grant such relief this Court would of necessity disregard the public acts, records, and judicial proceedings of the State of New York and would thereby deny full faith and credit to the public acts, records and judicial proceedings of the State of New York in contravention of and contrary to the provisions of Article IV, Section 1, of the Constitution of the United States, U.S.C.A.;

"(d) To grant such relief this Court would deprive the respondent of its property without due process of law in violation of Section 1 of the Fourteenth Amendment to the Constitution of the United States;

"(e) To grant such relief this Court would interfere with or control the management of the internal affairs of the respondent by its Board of Trustees acting under and pursuant to the respondent's charter and the law of the State of New York, would undo what its said Board of Trustees has already done in the exercise of the power conferred upon it by the said Charter and the law of the State of New York in determining the amount of divisible surplus of the respondent and in making an equitable apportionment thereof for the year 1937, and would require it in the future to conform with respect to the management of its internal affairs of the judgment of the Courts and tribunals other than those of the State of New York, which would result in indescribable confusion and conflict of authority, in gross inequity and injustice in violation of the rights of members of the respondent not before this Court, in the impairment or destruction of the powers vested in the said Board of Trustees by the said charter and the law of the State of New York, and in interference with its duties and obligations and the rights of the respondent, all in contravention of the laws and judicial decisions of the State of New York and the regulations, orders, and holdings of the Insurance Department of the State of New York pursuant to the said laws and judicial decisions.

"Wherefore, the respondent avers that the government and Courts of the State of New York have sole and exclusive jurisdiction over the matters and things alleged and set forth in the said bill of complaint as last amended and that this Court is without jurisdiction over the subject matter thereof; and the respondent further avers that this Court should not take jurisdiction over the matters and things alleged and set forth in said bill of complaint as last amended; and the respondent prays,

therefore, that the bill of complaint filed herein as last amended be dismissed and that the respondent be allowed to go hence with its reasonable costs in its behalf expended."

Exhibit No. 1 is made by reference a part of the amended plea to jurisdiction, and carries the "Charter and By-Laws of The Mutual Life Insurance Company of New York—Charter Laws 1842 and Amendments—By-Laws as Amended by The Board of Trustees January 25, 1933." This exhibit will be carried into the statement of fact by the reporter, as the same may be pertinent.

The test by which it is determined whether the object of a suit is to have the local courts exercise visitorial powers over a foreign corporation or interfere with the management of its internal affairs is stated by the Supreme Court of Maryland in North State Copper & Gold Mining Company v. Field, 64 Md. 151, 20 A. 1039.

To the same effect is the announcement by this court in Boyette v. Preston Motors Corporation, 206 Ala. 240, 89 So. 746, 18 A.L.R. 1376, wherein the North State Copper Case, supra, is cited with approval. In the Boyette Case, supra, many authorities are cited from the several courts of last resort to the effect that courts cannot exercise visitorial power over foreign corporations, or interfere with the management of their internal affairs, and that such matters must be settled by the courts of the state creating the corporation or that of its domicile. Hoglan v. Moore, 219 Ala. 497, 122 So. 824; Importing & Exporting Company v. Locke, 50 Ala. 332; Taylor v. Mutual Reserve Fund Life Ass'n, 97 Va. 60, 33 S.E. 385, 45 L.R.A. 621; Hogue v. American Steel Foundries, 247 Pa. 12, 92 A. 1073; Hartford Life Ins. Co. v. Ibs, 237 U.S. 662, 35 S.Ct. 692, 59 L. Ed. 1165, L.R.A.1916A, 765; Allen v. Montana Ref. Co., 71 Mont. 105, 227 P. 582; State v. Shain, 245 Mo. 78, 149 S.W. 479; Hamilton v. United Laundries Corp., 111 N.J.Eq. 78, 161 A. 347; Condon v. Mutual Reserve Fund Life Ass'n, 89 Md. 99, 42 A. 944, 44 L.R.A. 149, 73 Am.St.Rep. 169; State v. Denton, 229 Mo. 187, 129 S.W. 709, 138 Am.St.Rep. 417; Tolbert v. W. O. W., 83 Wash. 287, 145 P. 183; Rogers v. Guaranty Trust Company, 288 U.S. 123, 53 S.Ct. 295, 77 L.Ed. 652, 89 A.L. R. 720; Graeser v. Phoenix Finance Co., 218 Iowa 1112, 254 N.W. 859; Clark v. Mutual Reserve Fund Ass'n, 14 App.D.C. 154, 43 L.R.A. 390; Patterson v. Lynde, 112 Ill. 196, 206; State v. Timber Company, 106 La. 621, 31 So. 172, 87 Am.St. Rep. 309; Olsen v. Danish Brotherhood, 150 Minn. 8, 184 N.W. 178, 18 A.L.R. 1370; Jackson v. Hooper, 76 N.J.Eq. 592, 75 A. 568, 27 L.R.A.,N.S., 658; Sauerbrunn v. Hartford Life Ins. Co., 220 N.Y. 363, 115 N.E. 1001; Howard v. Mutual Reserve Fund Life Ass'n, 125 N.C. 49, 34 S.E. 199, 45 L.R.A. 853; Royal Fraternity Union v. Lunday, 51 Tex.Civ.App. 637, 113 S.W. 185.

The respective jurisdictions entertaining this view are United States Supreme Court, Alabama (with its cases cited supra), Arkansas, California, Delaware, District of Columbia, Illinois, Louisiana, Maryland, Massachusetts, Minnesota, Missouri, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oregon, Pennsylvania, Texas, Vermont, Virginia, Washington, Wisconsin, and Canada. The reason for the rule is variously stated as follows:

"The rule rests, according to some decisions on considerations of policy and propriety, rather than of power. Though the court has acquired jurisdiction of the necessary parties, and of the subject-matter, the exercise of that power rests in its discretion, and in the exercise of that discretion courts have refused to render a decree affecting the internal affairs or management of a foreign corporation, deeming it expedient that the matter should be committed to the courts of the domicil.

\*   \*   \*   \*   \*   \*

"Many cases declare the reason of the rule against assuming jurisdiction of an action involving the internal affairs of a foreign corporation, to be the impossibility of enforcing the decree or order.

\*   \*   \*   \*   \*   \*

" 'Whilst a court may have jurisdiction to hear and determine a cause against a corporation, and to render judgment commanding it to perform a particular act, and may also have such power for the enforcement of its judgment as its grantor can confer, nevertheless, if the corporation has its domicil in a foreign state or country, and the particular officers to whom alone the necessary compulsion can be applied are beyond the reach of its process, the jurisdiction, as a whole, falls short; and, as the court will be powerless to enforce obedience, the judgment will not be ren-

dered.' State ex rel. Watkins v. North American Land & Timber Co., 1902, 106 La. 632, 31 So. 172, 87 Am.St.Rep. 309." 18 A.L.R., pp. 1386, 1388 and 1389.

In Taylor v. Mutual, &c. Life Ass'n, 97 Va. 60, 67, 33 S.E. 385, 45 L.R.A. 621, Mr. Justice Buchanan observed of the statute as to foreign corporations and associations upon the assessment plan under the Acts of Extra Session 1887, ch. 271, p. 348, &c., as follows [page 388]:

"The object of that provision of the act was to secure the residents of this state the benefit and protection of its own laws, and to confer upon its own courts jurisdiction to determine and enforce their rights where the subject-matter of the litigation was within their jurisdiction, or the remedy sought was within their reach. It provides how the corporation can be brought into court, but it does not confer upon the courts, nor does it require such corporations to concede, any right to exercise authority over the organization, the corporate functions, nor the relations between the corporation and its members; nor to determine the rights and duties of the corporation or its members arising under the law of the state of its creation, and depending upon its local laws, nor deprive it of the right to plead a want of jurisdiction on the ground that the subject-matter of the suit, or the remedy sought, is beyond the reach of the court, or not within the sovereign power of the state from which the court derives its authority. Smith v. Mutual Life Ins. Co. [14 Allen, Mass., 336], supra; Clark v. Mut. Reserve Fund Ass'n [decided by the Court of Appeals of the District of Columbia] (Feb. 7, 1899) [14 App.D.C. 154, 43 L.R.A. 390]; and Condon v. Mut. Reserve Fund Ass'n [89 Md. 99, 42 A. 944, 44 L.R.A. 149, 73 Am.St.Rep. 169], supra. See Story on Conf. Laws, § 543.

"The next question to be considered is whether or not the acts complained of are so distinctively acts pertaining to the management of the internal affairs of the association that they can only be inquired into by the courts of the state creating it.

"It is sometimes difficult to determine what acts of a corporation relate to its internal management and what do not."

■ The courts have remarked upon the difficulty of determining the meaning of the term "internal affairs" and denying of visitorial power or interference as a result thereof. The test or definition as stated in North State Copper & Gold Mining Co. v. Field, 64 Md. 151, 20 A. 1039, is as follows [page 1040]: "We apprehend the distinction to be this: That, where the act complained of affects the complainant solely in his capacity as a member of the corporation, whether it be as stockholder, director, president, or other officer, and is the act of the corporation, whether acting in stockholder's meeting, or through its agents, the board of directors, that then such action is the management of the internal affairs of the corporation, and in case of a foreign corporation our courts will not take jurisdiction. Where, however, the act of the foreign corporation complained of affects the complainant's individual rights only, then our courts will take jurisdiction, whenever the cause of action arises here."

This definition has been accepted and approved in the following, and other, jurisdictions:

"Bradbury v. Waukegan & W. Min. & Smelting Co. (1904) 113 Ill.App. [600], 608; Jackson v. Hooper (1910) 76 N.J.Eq. 592, 75 A. [568], 573, 27 L.R.A.,N.S., 658; Howard v. Mutual Reserve Fund Life Asso. (1899) 125 N.C. 49, 34 S.E. 199, 45 L.R.A. 853; State ex rel. Ferencz v. Unida Gold Min. Co. (1910) 32 Ohio C.C. 60; Madden v. Penn Electric Light Co. (1897) 181 Pa. 617, 37 A. 817, 38 L.R.A. 638; McCloskey v. Snowden (1905) 212 Pa. 249, 61 A. 796, 108 Am.St.Rep. 867. Compare State ex rel. Watkins v. North American Land & Timber Co. (1902) 106 La. [621], 634, 31 So. 172, 87 Am.St.Rep. 309.

"In Madden v. Penn Electric Light Co. (1897) 181 Pa. 617, 37 A. 817, 38 L.R.A. 638, the court added that it was immaterial that the visible, tangible property of the foreign corporation was situated within the state. See to the same effect, Sprague v. Universal Voting Mach. Co. (1907) 134 Ill.App. 379." [18 A.L.R. 1390].

"In a number of other cases the *courts have defined what affairs of a foreign corporation will not be interfered with.* [Italics supplied].

"Examples of such cases are suits to dissolve a corporation; to appoint a receiver; to determine the validity of its organization, or which of two rival organizations is legal; *to restrain it from declaring a dividend or compel it to make one;* to re-

strain an issue of stock or of bonds; [Such was the rule of Boyette v. Preston Motors Corp. (1921) 206 Ala. 240, 89 So. 746, 18 A.L.R. 1376] to compel a division of its assets to restore a stockholder to his right to vote at stockholders' meetings from which he has been excluded; or to compel the recognition of one claiming to have been elected a director.—Babcock v. Farwell (1910) 245 Ill. 14, 91 N.E. 683, 137 Am.St.Rep. 284, 19 Ann.Cas. 74. [Italics & Parenthesis supplied].

" 'To entertain an action to dissolve a corporation; to determine the validity of its organization; to determine which of two rival organizations is the legal one, or who of rival claimants are its legal officers; *to restrain it from declaring a dividend, or to compel it to make one;* to restrain it from issuing its bonds, or from making an additional issue of stock—would clearly all be the exercise of visitatorial powers over the corporation, or an interference with the management of its internal affairs.' Guilford v. Western U. Teleg. Co., 59 Minn. 332, 61 N.W. 324, 50 Am.St. Rep. 407. [Italics supplied].

"So, it has been said: 'Where the acts complained of affect the plaintiff in his rights as corporator, or stockholder, or as a member of a mutual benefit or insurance company or other corporation, and the acts are those of the corporation, done and performed in the course of the administration of the corporate affairs, and especially when claimed to have been done and performed, or authorized to be done, by virtue of authority derived from its charter or by-laws, the courts of another state or jurisdiction will not interfere, or attempt to exercise jurisdiction to direct, control, or revise corporate action.' Clark v. Mutual Reserve Fund Life Ass'n, 14 App.D.C. 154, 43 L. R.A. 390.

"In Tasler v. Peerless Tire Co. (1919) 144 Minn. 150, 174 N.W. 731, the court said: 'The courts of this state have no "visitatorial powers" over foreign corporations. They have no jurisdiction to interfere with their "internal management;" that is, they could not enforce forfeiture of charter, or removal of officers, nor could they exercise authority over corporate functions, or direct the manner of the transaction of the corporate business.'

"Similarly, it has been held that 'courts of one state cannot exercise visitatorial powers over corporations of other states, such as requiring them to pay such dividends as, on an accounting of the affairs of the corporation, may appear to be proper, nor to determine whether a stockholder has been wrongfully excluded from his privileges, and matters of that kind.' Edwards v. Schillinger (1910) 245 Ill. 231, 91 N.E. 1048, 33 L.R.A. (N.S.) 895, 137 Am.St.Rep. 308." 18 A.L.R. 1391.

Adverting to the cases from this jurisdiction, we may say that in Lucas v. Bank of Georgia, 2 Stew., Ga., 147, the question was the statement or authority of an attorney by which the suit by a Georgia corporation was instituted, and the observation was made that the defendant in error did not ask to be permitted to interfere with the legal rights and immunities of a citizen, but only invoked the remedy given for the attainment of an undisputed right, or if disputed, only by the debtor; that Great Britain and the Dutch Trading Companies had opened their doors for the prosecution of rights by foreign corporations; that this court would find itself constrained, by considerations of international comity, to accord a permission to the corporation of another government to prosecute suits in our Courts, and more especially when, by doing so, the rights of our own citizens would not be affected. This case does not touch the question now presented for consideration, and it is only adverted to because of its citation in the Importing and Exporting Company of Georgia v. Locke et al., 50 Ala. 332. The decision in the last cited case was:

"An action brought by a foreign corporation, organized in Georgia, in 1863, under a general law enacted prior to 1861, cannot be defeated by a plea, which avers that the corporation was organized for the purpose of running the blockade, in violation of the laws of the United States, and that its charter was obtained through the action of a rebel court.

"As a general rule a foreign corporation may prosecute a suit in the courts of this State, whenever the individual corporators would be permitted to do so; though the court might withdraw its aid, on clear proof of the treasonable character of the corporation.

"A corporation is not to be deemed dissolved, or its charter forfeited, by reason of any misuser or non-user of its franchises, until the default has been judicially ascertained and declared; and this can only

be done by the courts of the state by which its charter was granted."

·The observation of the court in the last cited case is on the· authority of Society, for Propagation of Gospel v. New Haven, 8 Wheat. 464, 5 L.Ed. 662, and Lucas v. Bank of Georgia, 2 Stewart, 147. We have indicated that the Lucas Case, supra, is beside the point here, and find the same to be true of the case of Society, etc., v. New Haven, supra.

In Hoglan v. Moore, 219 Ala. 497, 122 So. 824, the observation is made that [page 828],

"In assuming the relation of stockholder, one subjects himself to the corporate laws of the state in which corporations are created, and the situs of its stock for the purpose of transfer, dividends, liens, etc., is in the state where the corporation is required to keep its registry of transfer and transact its said corporate business. Boyette v. Preston Motors Corp., 206 Ala. 240, 89 So. 746, 18 A.L.R. 1376; ·Importing & Exporting Co. of Georgia v. Locke, 50 Ala. 332.

"The courts of one state have no visitorial power over the corporations of another state in matters of vital concern to internal policy and management; and the issuance of stock, its transfer or succession, in the instant case, is that affecting a Georgia corporation with its business situs there; · the succession dependent upon the construction of the Georgia Courts where the testator lived and his will duly probated. Georgia is the proper forum for litigation as to such· matter."

In 89 A.L.R. 720, et seq., the old and later cases on the question are collected in the annotations to Rogers v. Guaranty Trust Company of New York et al., 288 U. S. 123, 53 S.Ct. 295, 77 L.Ed. 652.

The pleas in this case are substantially in form and substance upheld in Boyette v. Preston Motors Corp., 206 Ala. 240, 89 So. 746, 18 A.L.R. 1376. It was stated that [page 749]:

"The question is stated in Guilford v. Western Union T. Co., 59 Minn. 332, 61 N.W. 324, 50 Am.St.Rep. 407:

" 'The doctrine is well settled that courts will not exercise visitorial powers over foreign corporations, or interfere with the management of their internal affairs. Such matters must be settled by the courts of the state creating the corporation. This rule rests upon a broader and deeper foundation than the mere want of jurisdiction in the ordinary sense of that word. It involves the extent of the authority of the state (from which its courts derive all their powers) over foreign corporations. The only difficulty is in drawing the line of demarcation between matters which do and those which do not pertain to the management of the internal affairs of a corporation. To entertain an action to dissolve a corporation, to determine the validity of its organization; to determine which of two rival organizations is the legal one, or who of rival claimants are its legal officers; to restrain it from declaring a dividend, or to compel it to make one; to restrain it from issuing its bonds, or from making an additional issue of stock— would clearly all be the exercise of visitorial powers over the corporation, or an interference with the management of its internal affairs. * * * But in the present case there is no question as to the issue, validity, or forfeiture of the stock. There is not even any controversy as to the right of the plaintiff to a certificate as evidence of his title. The only dispute is over the terms or conditions upon which that certificate shall be issued. We do not see how the granting of such relief is, in any proper sense, the exercise of visitorial powers or an interference with the management of the internal affairs of the defendant.'

"See, also, Taylor v. Mutual Reserve F. L. Ass'n, 97 Va. 60, 33 S.E. 385, 45 L.R. A. 621.

"In this jurisdiction, in Importing & Exporting Company of Georgia v. Locke, supra, it was sought to have an Alabama court declare the charter of a Georgia corporation forfeited; and, on authority of Society, etc., v. New Haven, 8 Wheat. 464, 5 L.Ed. 662, it was said:

" 'The courts of Alabama have not jurisdiction to adjudge a forfeiture of a Georgia corporation.' "

In the case of Boyette v. Preston Motors Corp., supra, this court further said: "After all that may be said of comity between states by public policy, it is sufficient that when complainant became a stockholder in the Motor Car Company, a corporation organized and operating under the laws of Delaware, he subjected himself—in assuming the relation of stockholder—to the general corporate laws of that state as affect-

ing that corporation's powers, obligations, and merger or consolidation with other corporations organized under the laws of that state; and he is presumed, or is held, to have contracted with reference to the laws of Delaware, and not of Alabama."

In the case of Hartford Life Insurance Co. v. Ibs, 237 U.S. 662, 35 S.Ct. 692, 59 L.Ed. 1165, L.R.A.1916A, 765, the insured, a member of a mutual insurance company, was subject to an assessment to meet certain death claims in accordance with a provision in the policy for assessment to create a mortuary fund. He failed to pay this assessment and his policy was forfeited. After his death the beneficiary claimed that the assessment was unnecessary and therefore void, and assailed the management of the company. The beneficiary brought suit in a Minnesota court [121 Minn. 310, 141 N.W. 289, Ann.Cas.1914C, 798], against the insurance company, a Connecticut corporation. The suit was filed by the beneficiary in behalf of himself and other policyholders similarly situated. Theretofore other policyholders suing in behalf of themselves and others similarly situated had sued the defendant in Connecticut where it was domiciled. The Connecticut court [Dresser v. Hartford Life Ins. Co., 80 Conn. 681, 70 A. 39] upheld the company's action in connection with the disputed assessment. The company pleaded in the Minnesota court the decision of the Connecticut court and claimed that the plaintiff in Minnesota was foreclosed thereby on the ground that the Minnesota court was obligated to give full faith and credit to the decision of the Connecticut court.

The Supreme Court of the United States sustained the position of the insurance company, and in the course of its opinion said [page 695]: "For—whether the members of the 'Safety Fund Department' are regarded as occupying a position analogous to that of shareholders, or are treated as beneficiaries of trust property in the hands of the company, as trustee, in the state of Connecticut, the courts of that state had jurisdiction of all questions relating to the internal management of the corporation. Selig v. Hamilton, 234 U.S. 652, 34 S.Ct. 926, 58 L.Ed. 1518 [Ann.Cas.1917A, 104]; Mutual Life Insurance Co. v. Harris, 97 U.S. [331], 336, 24 L.Ed. [959], 962; Condon v. Mutual Reserve Fund Life Ass'n, 89 Md. 99, 42 A. 944, 44 L.R.A. 149, 73 Am.St.Rep. 169; Maguire v. Mortgage Co.,

[2 Cir.], 203 F. 858. It was for the court of the *state where* the *company was chartered* and where the *fund* was *maintained to say what was the character of the members' interest—whether they were entitled to have it distributed in cash, or used in paying the next assessment,* or retained as a Fund for the prompt settlement of claims, with the right and duty on the part of the company, as their trustee, to replenish the same by collections from succeeding assessments." [Italics supplied.]

The complainant cites the Ibs Case, supra, in support of his claim, but not only is it not helpful to him, but on the contrary, it is squarely against him. He overlooks the crucial fact that the suit which was determinative of the controversy was filed in Connecticut, the defendant's domicile, and that the Supreme Court in its opinion said that "the courts of that state [Connecticut] had jurisdiction of all questions relating to the internal management of the corporation."

In numerous cases courts have refused to take jurisdiction where the action of a foreign mutual or fraternal benefit insurance company in regard to the rate of assessment was questioned. Such cases are closely analogous to this case, wherein the complainant seeks to have the Alabama court regulate and control the apportionment as dividends of the respondent's divisible surplus. Howard v. Mutual Reserve Fund Life Ass'n, 125 N.C. 49, 34 S.E. 199, 45 L.R.A. 853; Taylor v. Mutual Reserve Fund Life Ass'n, 97 Va. 60, 33 S.E. 385, 45 L.R.A. 621; Clark v. Mutual Reserve Fund Ass'n, 14 App.D.C. 154, 43 L.R.A. 390; Olsen v. Danish Brotherhood, 150 Minn. 8, 184 N.W. 178, 18 A.L.R 1370; Condon v. Mutual Reserve, 89 Md. 99, 42 A. 944, 44 L.R.A. 149, 73 Am. St.Rep. 169; State v. Denton, 229 Mo. 187, 129 S.W. 709, 138 Am.St.Rep. 417.

In State v. Denton, supra, the petition sought a writ of prohibition to prevent the lower court from exercising jurisdiction in a case involving alleged excessive assessments levied by a mutual insurance company. The action of the lower court involved a policy in which a rate of assessment was not set forth. The court refused to take jurisdiction on the ground that a review of the reasonableness of the assessment would involve interference with the internal affairs of a foreign corporation. In the course of its opinion the court said [page 713]: "It would be impossible

for the circuit court to render an intelligent judgment for the money which the plaintiff says he has been unlawfully compelled to pay in excess of legitimate assessments without entering into the elaborate accounting above indicated, and since the court has no jurisdiction to make such an accounting it has no jurisdiction to render such a money judgment."

The leading case is Taylor v. Mutual Reserve Fund Life Association, supra, which was cited with approval by this court in its opinion in the Boyette Case, supra. Virtually every contention made by the complainant here was made by the complainant in that case and was decided adversely to him. In the course of its opinion, the Supreme Court of Appeals of Virginia said [page 388]:

"Several grounds of demurrer are relied on, but the principal objection urged to the bill is that the case made and the relief sought would require the court to interfere with the internal management of a foreign corporation, a subject-matter over which the court has no jurisdiction. If this objection is well founded, it is decisive of the case, and will render it unnecessary for us to consider the other grounds of demurrer. It seems to be well settled that courts will not interfere with the management of the internal affairs of a foreign corporation. Such questions are to be settled by the tribunals of the state which created the corporation. The reasons for such a rule are apparent. Courts other than those of the state creating it, and in which it has its habitat, have no visitorial powers over such corporation, have no authority to remove its officers, or to punish them for misconduct committed in the state which created it, nor to enforce a forfeiture of its charter. *Neither have they the power to compel obedience to their orders nor to enforce their decrees.* Smith v. Insurance Co., 14 Allen [Mass.] 336; North State Copper & Gold Mining Co. v. Field, 64 Md. 151, 20 A. 1039; Condon v. Association (Md.; Jan. Term, 1899), [89 Md. 99], 42 A. 944 [44 L.R.A. 149, 73 Am.St.Rep. 169]; 6 Thomp.Corp. § 8011.

"There is nothing in the act of assembly approved May 18, 1887, entitled 'an act in relation to insurance companies and associations upon the assessment plan' (Acts Ex.Sess.1887, p. 348, c. 271), which changes the general rule upon the subject, and gives to the courts of this state the right to control or interfere with the management of the internal affairs of a foreign corporaion doing business here. Section 3 of that act provides, among other things, that no insurance company or association organized upon 'the assessment plan shall transact business in this state by an agent, unless it shall first authorize some person who is a resident of this state 'to act as its attorney, and to acknowledge service of process, or upon whom process may be served for and on behalf thereof, which service shall be taken and held to be as valid as if served upon such corporation or association according to the laws of this or any other state.'

"The object of that provision of the act was to secure the residents of this state the benefit and protection of its own laws, and to confer upon its own courts jurisdiction to determine and enforce their rights where the subject-matter of the litigation was within their jurisdiction, or the remedy sought was within their reach. It provides how the corporation can be brought into court, but it does not confer upon the courts, nor does it require such corporations to concede, any right to exercise authority over the organization, the corporate functions, nor the relations between the rights and duties of the corporation or its members arising under the law of the state of its creation, and depending upon its local laws, nor deprive it of the right to plead a want of jurisdiction on the ground that the subject-matter of the suit, or the remedy sought, is beyond the reach of the court, or not within the sovereign power of the state from which the court derives its authority."

The question was reconsidered by the Supreme Court of the United States, in a suit touching the allotment of dividend stock, and speaking through Mr. Justice Butler, said: "It has long been settled doctrine that a court—state or federal—sitting in one state will, as a general rule, decline to interfere with, or control by injunction or otherwise, the management of the internal affairs of a corporation organized under the laws of another state but will leave controversies as to such matters to the courts of the state of the domicile. Wallace v. Motor Products Corp. (C.C.A. [6]) 25 F.(2d) 655, 658; Chicago Title & T. Co. v. Newman (C.C.A. [7]) 187 F. 573, 576; Eberhard v. Northwestern Mut. L. Ins. Co. (D.C.) 210 F. 520, 522; Powell v. United Asso. of P. & S., 240 N.

Y. 616, 148 N.E. 728; Sauerbrunn v. Hartford L. Ins. Co., 220 N.Y. 363, 371, 115 N. E. 1001; Jackson v. Hooper, 76 N.J.Eq. 592, 604, 75 A. 568, 27 L.R.A.(N.S.) 658; Guilford v. Western U. Teleg. Co., 59 Minn. 332, 340, 61 N.W. 324, 50 Am.St. Rep. 407; Kimball v. St. Louis & S. F. R. Co., 157 Mass. 7, 31 N.E. 697, 34 Am. St.Rep. 250; Hogue v. American Steel Foundries, 247 Pa. 12, 15, 92 A. 1073; Babcock v. Farwell, 245 Ill. 14, 33 et seq., 91 N.E. 683, 137 Am.St.Rep. 284, 19 Ann. Cas. 74; Clark v. Mutual Reserve Fund Life Asso., 14 App.D.C. 154, 179, 180, 43 L.R.A. 390; North State Copper & G. Min. Co. v. Field, 64 Md. 151, 20 A. 1039. Cf. Burnrite Coal Briquette Co. v. Riggs, 274 U.S. 208, 212, 213, 47 S.Ct. 578, 71 L.Ed. 1002 [1005, 1006]. While the District Court had jurisdiction to adjudge the rights of the parties, it does not follow that it was bound to exert that power. Canada Malting Co. v. Paterson Steamships, 285 U.S. 413, 422, 52 S.Ct. 413, 76 L.Ed. 837 [842], and authorities cited. It was free in the exercise of a sound discretion to decline to pass upon the merits of the controversy and to relegate plaintiff to an appropriate forum. Langnes v. Green, 282 U.S. 531, 535, 541, 51 S.Ct. 243, 75 L.Ed. 520 [523, 526]; Heine v. New York L. Ins. Co. (C. C.A.[9]) 50 F.(2d) 382. Obviously no definite rule of general application can be formulated by which it may be determined under what circumstances a court will assume jurisdiction of stockholders' suits relating to the conduct of internal affairs of foreign corporations. But it safely may be said that jurisdiction will be declined whenever considerations of convenience, efficiency, and justice point to the courts of the state of the domicile as appropriate tribunals for the determination of the particular case. Cohn v. Mishkoff-Costello Co., 256 N.Y. 102, 105, 175 N.E. 529; Travis v. Knox Terpezone Co., 215 N.Y. 259, 263, 109 N.E. 250, L.R.A.1916A, 542, Ann. Cas.1917A, 387; Kimball v. St. Louis & S. F. R. Co. [157 Mass. 7, 31 N.E. 697, 34 Am.St.Rep. 250], supra." Rogers v. Guaranty Trust Co. of N. Y. et al., 288 U. S. 123, 53 S.Ct. 295, 297, 77 L.Ed. 652, 89 A.L.R. 720, 725.

The complainant is a member of respondent Mutual Life Insurance Company and the acts of the respondent complained of in this suit affect him solely in his capacity as such. We have indicated above from the test stated in North State Copper & Gold Mining Company v. Field, 64 Md. 151, 20 A. 1039, that this court had not the visitorial powers sought to be asserted. The charter of the Mutual Life Insurance Company of New York is exhibited as a part of the plea to the jurisdiction in question. Its section 3 provides that "all persons who shall hereafter insure with the said corporation, and also their heirs, executors, administrators and assigns, continuing to be insured in said corporation, as hereinafter provided, shall thereby become members thereof during the period they shall remain insured by said corporation, and no longer."

■] The complainant, becoming a member of such mutual company is entitled to dividends only after the ascertainment and apportionment of the divisible surplus. Greeff v. Equitable Life Assur. Soc., 160 N.Y. 19, 54 N.E. 712, 46 L.R.A. 288, 73 Am.St.Rep. 659. In the last cited authority, the statement of the question is that under the policy it was only the proportion of the surplus which equitably belonged to it that was to be credited to it and paid to plaintiff. Therefore, before any amount of the surplus was available as a credit upon plaintiff's policy, the proportion which equitably belonged to him, or should be credited to his policy, must be ascertained and determined, and until this was done, no action at law to recover any portion of it could be maintained. The holding was that in such cases, until the dividend had been declared, a stockholder has no right of action at law to recover any part of the fund applicable to that purpose, and that *when directors have exercised their discretion in respect thereto, the courts will not interfere, unless there is bad faith and willful neglect or abuse of such discretion.*

To the like effect is Clarke v. Mutual Reserve Farm Ass'n., 14 App.D.C. 154, 43 L.R.A. 390, where it is observed: "To determine what those rights were or are, the constitution or articles of association and the by-laws should have been exhibited as part of the bill, for they are required to be consulted and construed in determining the nature of the contract, and the rights and duties of the parties thereto. And *though such constitution and by-laws may not be referred to in the certificate of membership, yet they are binding upon the members of the association, and constitute a part of the contract of membership.* By

508

becoming a member of a mutual association, such as the defendant in this case, one is conclusively presumed to know its constitution and by-laws, and if he fails to acquaint himself with them, he cannot escape their force and operation by setting up his want of actual knowledge of them, nor by showing that they were not referred to in the certificate held by him. * * *"

To like effect is Condon v. Mutual Reserve, 89 Md. 99, 42 A. 944, 44 L.R.A. 149, 73 Am.St.Rep. 169. In the Condon Case the observation is made that the matters complained of · did not affect appellant's right solely, in that the bar upon the liability or right of every other member as an insurer and in a sense affect him individually, yet they do not affect him exclusively, but others of his class, and the internal management of company in question, since his relation is two-fold in character. He is insurer and insured. As such it is possible that the same action of the body corporate may affect both relations. In that event, it could not be said to affect the member's individual right only.

In · Madden v. Electric L. Co., 181 ·Pa. 617, 621, 622, 37 A. 817, 38 L.R.A. 638, it is said that the fraudulent and dishonest conduct complained of impaired the value of the shareholder's stock, but the wrong imputed arose not from the violation of a contract with him, but for want of the fidelity to duty on the part of the directors in the fiduciary position occupied by them. These acts not only depressed the value of the stock, but they concerned the internal management of the corporation, and, therefore, though causing injury, furnished no ground for a Pennsylvania court to interfere with the government of a New Jersey corporation.

Every right asserted by Condon, Madden or this complainant is a right founded upon his membership and contract relation as such. The prayer for relief in each case sought by a member against his mutual corporation was in respect of some matter pertaining to the management and internal government of that association or mutual corporation.

Section 4 of the policy issued to the complainant in this cause provides in part as follows: That the share of the divisible surplus accruing on the policy which would be allotted as a dividend annually on each anniversary of its date, and the first such dividend would be payable only if any premium due on the said first anniversary had been duly paid.

This provision is in the policy in compliance with Section 83 of the New York Insurance Law, which requires that the respondent provide in every policy issued by it after January 1, 1907, "that the proportion of the surplus accruing upon said policy shall be ascertained and distributed annually and not otherwise," and that the respondent's Board of Trustees shall ascertain the surplus earned by the respondent in each year and, after setting aside a sum sufficient for certain designated purposes including a contingency reserve, "shall apportion the remaining surplus equitably to all other policies entitled to share therein * * *." The complainant's policy merely states that the share of the divisible surplus (if any) shall be allotted as a dividend on each anniversary of the policy. It does not give to the complainant any right to a particular apportionment of dividends or to any dividend at all, for there may be none. The ascertainment and apportionment of the divisible surplus as dividends are governed exclusively by the respondent's charter and by the laws of New York, which provide that the divisible surplus, after it has been ascertained by the Board of Trustees, must be apportioned equitably. The relief sought by the complainant—that the divisible surplus be apportioned and allotted ·in a manner different from that determined by the respondent's Board of Trustees—involves his rights as a member of the respondent and not otherwise.

The situation in this respect is not altered by the provisions of the policy relating to disability benefits which the complainant emphasizes. The policy, in Section 3, provides that, · upon certain conditions therein set forth, "the company will grant the following benefits during the remaining lifetime of the insured so long as his disability continues," and, further on in the same section, that "Neither the dividends nor the amount payable in any settlement hereof shall be decreased because of Disability Benefits granted." These provisions being in pari materia, it is obvious that they mean that if the company grants to the person insured disability benefits, it will not, because of such disability benefits thus granted to him, decrease the dividends on his policy or the amount payable upon his death. No disability benefits have been

509

granted to the complainant and, therefore, dividends on his policy have not been decreased because of disability benefits granted. This provision in the policy is wholly irrelevant to the issues involved on this appeal.

■ The form of suit is immaterial. The determining factor, as stated in the test which we have adopted, is whether as a matter of substance its object is to have this court exercise visitorial power and interfere with the management of the material and internal affairs of the Mutual Life Insurance Company of New York.

■ The prayer of the bill is to declare illegal distribution of the divisible surplus of respondent during the year 1937, in which distribution complainant and others similarly situated were not given equal consideration and credit with policyholders not having disability provisions; that such divisible surplus shall be distributed in the future ratably and equitably among policyholders holding similar policies to complainant, and that he and they be not discriminated against, because of the fact that their policies contain clauses providing for disability benefits. It is further prayed that the court enter an order, judgment or decree in favor of the complainant, and those similarly situated, against the respondent for the amount of dividends already declared and legal interest thereon, for discriminations charged contrary to the express terms of the contract. That is to say, the acts complained of are that the respondent, acting through its Board of Trustees, illegally ascertained and apportioned the divisible surplus for the year 1937, and that the manner in which it proposes to ascertain and apportion such divisible surplus for subsequent years will be illegal.

In answer to this insistence by complainant, respondent quotes certain pertinent sections of its charter and requirements of the laws of the State of New York, as follows:

"Section 4 of the respondent's charter provides:

"'All the corporate powers of the said company shall be exercised by a board of trustees, and such officers and agents as they may appoint.'

"Section 83 of the New York Insurance Law requires the respondent to provide in the policy issued to the complainant:

"'that the proportion of the surplus accruing upon said policy shall be ascertained and distributed annually and not otherwise.'

"Pursuant thereto, the respondent incorporated in Section 4 of the policy the following provision:

"'The share of the divisible surplus accruing on this policy shall be allotted as a dividend annually on each anniversary of its date, the first such dividend being payable only if any premium due on the first anniversary be duly paid.'

"Section 83 of the New York Insurance Law provides further that, on December 31 of each year or as soon thereafter as may be practicable, the respondent shall well and truly ascertain the surplus earned by it during the said year; and that, after setting aside from such surplus a sum sufficient for certain purposes including a contingency reserve, it 'shall apportion the remaining surplus equitable to all other policies entitled to share therein * * *.'"

Under the New York Insurance Law and the respondent's charter, therefore, the power and duty to ascertain and apportion the divisible surplus as dividends are vested in the respondent's Board of Trustees.

It is urged by respondent, and in this we agree, that when the complainant asks this court to adjudge that the distribution of the respondent's divisible surplus for the calendar year 1937 is illegal and to require such divisible surplus to be apportioned and distributed in the future in a manner different from the way it has been ascertained and apportioned by the respondent's Board of Trustees, he is asking this court to exercise visitorial powers over the respondent and to interfere in the management of its internal affairs and to substitute its judgment for the discretion vested by the respondent's charter and the New York Insurance Law in the respondent's Board of Trustees.

After all that may be said, the allegations of the bill do not show any breach of the policy contract, and, therefore, the case is not brought within the exception insisted upon by appellant.

It follows from the foregoing that the trial court's decree is free from error, and

510

that the same should be affirmed. It is so ordered.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.