Turner, J.
The policy sued upon is a New York contract. Appellant is a mutual life insurance company domiciled in New York and appellee was a member of such mutual society.
The question at issue is whether under the policy and Section 83 of the New York Insurance Law appellant apportioned what is called the ‘ ‘ divisible surplus ’ ’ equitably during the term or terms of appellee’s policy.
The first question for us to decide is whether the issues in this case require the éxercise of visitorial powers over a foreign corporation. In other words, is the judgment in this case an interference with the management of appellant’s internal affairs or an attempted control of the judgment or discretion of appellant’s officers? See Hartford Life Ins. Co. v. Douds, 103 Ohio St., 398, 136 N. E., 274, affirmed, Hartford Life Ins. Co. v. Douds, 261 U. S., 476, 67 L. Ed., 754, 43 S. Ct., 409.
In the case of Hartford Life Ins. Co. v. Douds, supra, this court and the Supreme Court of the United States had before them a cause in which an accounting was had and money judgment obtained for all sums of money wrongfully obtained under color of an insurance contract. The insurance company claimed that exclusive jurisdiction over the subject-matter of the action was with the courts of the company’s domicile and that the exercise of jurisdiction by the Ohio *71 courts violated the company’s rights under the Fourteenth Amendment to the Constitution of the United States. In passing upon this question, Judge Robinson said, at page 424:
“If the developments of the hearing before the referee in the case at bar did not refute the assumption that a determination of the issues in this case required an exhaustive visitation and examination of the books of the company, and if the judgment in this case operated to regulate the discretion and internal management of the affairs of the company, we would feel constrained to follow the reasoning and conclusion of the courts in those cases and the authorities there cited. But in the case at bar the referee was able to and did make an accounting between the plaintiff in error and the defendant in error upon the contract of insurance’ and the assessment- calls issued to the defendant in error by the plaintiff in error, and upon the printed ratio for each such call and the rule for determining such ratio issued by the secretary of the plaintiff in error and supplied by a former general agent of the company; and but for the fact that the defendant in error had not preserved all such assessment calls, no other or further data would have been required by the referee in making the computation of the account. The defendant in error, however, having lost or destroyed a portion of the assessment calls, was obliged, as to a considerable number thereof, to supply other proof, which was done by introducing in evidence parts of the public report of the insurance commissioner of the state of Connecticut showing the data, from which together with the assessment calls it became a mere matter of mathematical calculation, and the trial court, treating the action as one for an accounting and the recovery of money wrongfully obtained under color of the contract, made an accounting and rendered judgment against the plaintiff in error *72 for the amount so found to have been demanded and paid in excess of the amount authorized by the contract. ’ ’
Both this court and the Supreme Court of the United States treated the Doucls action as one merely to recover excess payments wrongfully collected.
In the instant case, there is no claim that any money was wrongfully obtained. Appellee, as plaintiff below, based its claim on the following provision of the policy:
“The proportion of divisible surplus accruing upon this policy shall be ascertained annually. Any sum apportioned to this policy as a dividend shall be paid in cash to the union [appellee] on the anniversary of the register date, or upon written notice to the society shall be applied to the payment of any premium. hereon. ’ ’
After setting up this provision of the policy, appellee alleged in its amended petition: “but that defendant company, instead of ascertaining annually the amount of divisible surplus, if any, accruing upon said policy, has arbitrarily and without justification computed the divisible surplus accruing upon said policy upon the basis of the term and life of the policy, to wit: from the date of its issuance until July 1, 1935.”
It was the claim of the appellee that the term of the policy was one year but that the appellant had treated the policy as a nine-year term.
Appellee alleged that appellant was indebted to it in the sum of $41,297.23 and closed its amended petition with the following prayer:
“Wherefore, plaintiff prays that an accounting be had as between this plaintiff and said defendant upon the aforesaid cause of action; that plaintiff recover from defendant such sums of money as shall be found due plaintiff by reason of said accounting; that defendant be required to answer, under oath, the inter *73 rogatories hereto attached and made a part of this amended petition; and for such other and further equitable relief as in the premises plaintiff may be entitled to.”
At the outset of the trial, counsel for appellee made the following statement to the court:
“If your Honor please, in the case called for trial, the Relief Association of The Union Works of the Carnegie Steel Company of Youngstown vs. The Equitable Assurance Society of the Unitéd States, cause 96953, counsel for both plaintiff and defendant are somewhat in doubt as to whether or not the cause of action is in the nature of an action at law or an action in equity, but in either event counsel for both plaintiff and defendant now stipulate the cause may be tiled to the court without the intervention of a jury.”
Manifestly, the instant case differs radically from the Doucls case, supra. No assessments are involved here. There is no claim of money wrongfully obtained. There is, however, the claim of inequitable treatment by the appellant in the allocation of the “divisible surplus.” On the face of the amended petition, the instant case clearly involves the internal management of appellant.
If there were any doubt left from the reading of the amended petition itself, a glance at the 24 interrogatories attached to appellee’s amended petition should remove it.
These interrogatories sought the formula or method of computation used by appellant in computing the proportion of divisible surplus allocated during the years appellee’s policy was in effect.
The answers to these interrogatories. were offered in evidence.
To maintain the issues on its part to be maintained, appellee (plaintiff below) called an actuarial assistant in the actuary’s department of appellant, who happened to be in court assisting counsel for appellant. *74 One of the early questions by appellee to this witness was the following:
“Q. I probably did not state mv question correctly. To what extent, if any, did you participate in advising, say, counsel for the Equitable in the case as to the formulas used from ’26 to ’35 inclusive in the ascertainment of dividends for this class of insurance? A. I showed the various formulas used and broke them down to show exactly how we arrived at the dividends in the ascertainment of the divisible surplus on this contract, trying to explain to our counsel in as non-teclmical language as possible just what we were driving at.”
Then followed 63 pages of questions and answers of chief and cross-examination involving the internal management of appellant. During the examination in chief of this witness, there was a colloquy in which counsel for appellee said:
“It is immaterial as to whether I deem it [a pi’oposed blackboard demonstration] of any value or not. All I am attempting to develop are the principles involved, the breakdown of the charges they have made, leaving it for the conclusion to be made by the court whether or not under the law they are justified.”
During one of the redirect examinations of this witness, the trial court said :
“Now, I suggest, because I have not — I am not making any finding, but I suggest a consideration of all groups embraced in certificates of the character that we have here now, as being under a single annual term of group insurance with all calculations and all experiences under that policy to be confined to the one-vearperiod; I am not now asking whether that would be good insurance, I am not asking-for an opinion on that phase, I am simply asking whether actuarially the result for all groups could be calculated within that one year without any consideration of previous years’' *75 experience, or without any calculation as to continuing the group insurance into another year. Am I clear in my question?”
In the course of the trial court’s ruling upon appellant’s motion at the close of plaintiff’s case, the trial court said, inter alia:
“Now, the question is, looking at the charge made in the amended petition and the evidence that we have had, has the defendant followed the principles of its organization as a mutual company, and has it carried out to itself, because all these contributors constitute this mutual company, has it carried out to itself the provisions of its contract within the limitations the law places upon it by its own nature?”
The following is the concluding paragraph of the trial court’s finding of facts:
“The court further finds that, as shown by defendant’s ‘Exhibit I,’ the amount of insurance carried under policy No. 2143 for the year 1935 was $967,500; that as shown by defendant’s ‘Exhibit E,’ the total amount of group insurance in force and carried by defendant company for the year 1935 was $1,531,976,021; that the amount of insurance for the year 1935, represented in policy No. 2143, was sixty-five one thousandths per cent (.065%) of all group life insurance carried by defendant company during 1935; that as shown by defendant’s ‘Exhibit M,’ policy No. 2143 during the year 1935 was required to make a contribution to surplus in the sum of $12,146.73; that if all group life insurance policies had been required to contribute to surplus in the same ratio as policy No. 2143, there •would have been a contribution to surplus from group life insurance policies in an amount in excess of ■$17,000,000, whereas, as shown by the evidence, to- wit, page 410 of the record, all of the group life policies ■carried by defendant company for the year 1935 contributed to general surplus the sum of $1,628,000, and ■■that policy No. 2143 was required by defendant com *76 pany to contribute a grossly disproportionate and inequitable amount to surplus.”
In the trial court’s conclusions of law, it is said:
“To repeat, the question here is whether the practice and method used in the ascertainment and distribution of the surplus accruing to the instant policy at the end of each year of its renewable term was in accordance with these provisions of the policy, statutes and the law applying to the nature of the contract. * * *
“The company is doing the right actuarial thing in the wrong place-. * * *
“As being the appropriate remedy for the ascertainment and adjustment of the respective amounts of groups entitled to participate in the same fund, an accounting as prayed for is ordered in accordance with the principles herein held to be controlling under the contract between the parties. A journal entry in accordance herewith may be drawn.”
Much more to the same effect might be quoted, but we have shown enough to demonstrate that the trial court was exercising visitorial powers on a corporation or mutual life insurance society with its domicile in the state of New York.
If an Ohio court may thus pass upon the internal management of a foreign corporation and apply the applicable statutes, so may the courts of the various states in which the corporation does business make orders for the distribution of the divisible surplus with varying results, all of which interfere with the corporation’s internal management under the laws of its creation or domicile.
In the instant case, the trial court disposed of the actuarial formula as “excellent insurance practice” but not in conformity with the contract. The evidence in the instant case shows that the same formula was applied to every group. Hence, if the distribution is to become or remain equitable “the method of ascer *77 taining the divisible surplus according to each group policy after the determination of the amount of divisible surplus accruing on and allocated to all group policies” must be revised by appellant (New York Insurance Law, Sections 83 and 89), and clearly this is a matter of internal management.
The trial court’s explanation that while the apportionment was fair and equitable from an actuarial point of view still it violated “the legal nature and obligation of the contract” does not furnish a reason for the court’s exercise of visitorial powers which is the sum and substance of its holding.
The courts of many of the states have made specific holdings to the effect that such procedure is to be confined to the courts of the domicile of the insurance company.
A recent case in which the Supreme Court of Alabama went into the subject extensively is that of Ellis v Mutual Life Ins. Co. of New York, 237 Ala., 492, 187 So., 434, in which it was held that courts cannot exercise visitorial powers over foreign corporations or interfere with the management of their internal affairs, but such matters must be settled by courts of the state creating the corporation or that of its domicile.
It would lengthen this opinion unnecessarily to review all of the authorities examined by the Alabama court. As the full text of this case is available in the reports, we shall content ourselves by mere reference thereto.
In the case of Sauerbrunn v. Hartford Life Ins. Co., 220 N. Y., 363, 115 N. E., 1001, the court said, at page 371:
“That our courts might entertain jurisdiction of an action brought against defendant to recover for the death of a member and in such action to determine whether or not the policy was in force, the validity of an assessment made for nonpayment of which forfeit *78 ure was claimed, cannot be questioned. Such an action does not correspond to tlie action at bar wherein the court is invoked to exercise visitorial powers to review and decree how the acts of a corporation which derives its authority from the law of another state shall exercise such power.
“The trend of decisions of the courts is contrary to assumption of jurisdiction by the courts of the action at bar. We may assume that the membership of the defendant corporation extends throughout a number of states, and while it may be said that the present action affects the plaintiff alone, we cannot overlook the fact that if the various states assume jurisdiction in like actions the decisions of the courts might be divergent, different rules of law would prevail and a corporation might be called upon to account in various states and relieved therefrom by the decrees of the courts in other states. Likewise it might be held legal for it to increase assessments in certain jurisdictions and illegal to increase and collect the same in other jurisdictions. Uniformity of decision is preferable. Numerous jurisdictions have determined that an action like unto the one at bar is one relating to the internal affairs of a corporation of which the courts will decline to assume jurisdiction.” (Citing cases.)
But three paragraphs of the opinion of the Court of Appeals in the instant case were given to this subject, as follows:
“The first question presented for determination is whether the lower court had jurisdiction of the subject-matter of the action, and if so if it should have relinquished it for reasons of comity and uniformity in favor of the court of defendant’s domicile.
“We have carefully considered that question and have concluded that the action is one for accounting and breach of contract over which the lower court had jurisdiction, and which it was under no statutory or *79 other duty to relinquish. See 11 Ohio Jurisprudence, 686, Section 53.
“We find no error prejudicial to or denial of any of defendant’s rights on the part of the lower court in assuming jurisdiction of the case.”
The court did not discuss the Douds case, either as decided by this court or the Supreme Court of the United States.
While 11 Ohio Jurisprudence, 686, Section 53, is cited in the opinion, no reference is made to the following language, to be found in 11 Ohio Jurisprudence at page 718:
“The principle that the jurisdiction of state courts is limited by state boundaries finds application in various situations. The courts of one state have no visitorial or supervisory jurisdiction with regard to the internal affairs of a corporation of another state, which in no wise affect the rights of a citizen of such state other than in common with all other citizens, and distinct from its private rights as a stockholder. It is admitted that the courts of Ohio have no jurisdiction of an action for an accounting against a foreign corporation, which requires an exhaustive visitation and examination of the books of the corporation. But where the courts of Ohio are able to decree an accounting between a citizen of that state and a foreign insurance company, upon the assessment calls issued to the citizen of Ohio by the insurance company, and upon data furnished by the company, the accounting becomes a mere matter of mathematical calculation and'a recovery of money wrongfully obtained under color of contract, and it is within the jurisdiction of the courts of Ohio to make it.”
As the merits of this case should be passed upon by the courts of appellant’s domicile, we shall not attempt to pass thereon but shall dismiss this action without prejudice for the reason that the trial court had no jurisdiction to entertain the cause of action attempted *80 to be set up in appellee’s amended petition. The judgment of the Court of Appeals is reversed and this cause dismissed.

Judgment reversed and cause dismissed.

Williams, Matthias, Hart and Zimmerman, JJ., concur.
Bettman, J., not participating.