HOUSTON, Justice.
The plaintiffs, Charles Stroud, Walter Batson, and Robert King, appeal from a summary judgment for the defendants John M. Cockerham & Associates, Inc. (“the corporation”), John M. Cockerham, Charles Peel, Harold Stafford, John R. Riche, John Pótate, and Lawrence Mulloy on counts one, three, and four in this shareholders’ derivative action seeking declaratory relief and damages.[1] We affirm.
This action basically involves a power struggle among the corporation’s shareholders. The corporation was organized under the laws of Virginia and it has its principal place of business in Huntsville, Alabama. The plaintiffs are minority shareholders. Stroud and Batson were at one time officers of the corporation, and all three plaintiffs previously served on the board of directors. John M. Cockerham is the corporation’s principal shareholder, as well as its president and chairman of its board of directors. Peel, who is no longer employed by the corporation, was the corporation’s business manager. Peel was never an officer, director, or shareholder. Stafford is the corporation’s secretary, share transfer agent, and one of its directors. Stafford was also a substantial shareholder until 1989, when he sold his shares back to the corporation in exchange for one of its subsidiary companies, cash, and a promissory note covering the balance of the purchase price. As part of that transaction, Stafford reserved the right to vote his previously owned shares if the corporation defaulted on its note. Riche is a director of the corporation and Pótate is a shareholder. Mulloy is a shareholder and an employee of the corporation.
The following material facts appear to be undisputed: On or about November 1, 1989, the corporation mailed notices to its shareholders advising them that the annual shareholders’ meeting was scheduled for November 15, 1989. One of the purposes of this meeting was to nominate candidates for election to the board of directors. The actual election of the directors was scheduled for November 28, 1989. In anticipation of the November 15 meeting, the corporation’s assistant manager for computer operations prepared a shareholders’ voting list. Notices designating the number of voting shares owned by each shareholder were mailed to the shareholders on or about November 6, 1989. These notices stated that any change in the number of voting shares had to be approved by Peel and provided to the assistant manager by 2:00 p.m. on November 27, 1989. The notices further stated that only shareholders of record as of October 20, 1989, were eligible to vote.
Although Peel had indicated before November 15, 1989, that he thought the shareholders’ voting list was correct, he provided a “corrected” list at the meeting. Both the first list and the second list contained inaccuracies; however, the plaintiffs objected to the second list primarily because it showed Stafford as being entitled to vote the shares that he had previously sold to the corporation. Peel, who was responsible for adding those shares to the voting list, testified that as the corporation’s business manager he was responsible for making the monthly payments to Stafford under the corporation’s promissory note. Peel testified further that he was aware before the November 15 meeting that the corporation was in arrears in its payments to Stafford. Peel said he concluded that the corporation was in default on its note and, therefore, that Stafford was entitled to vote the shares that he had sold to the corporation. Stafford, who resides in Georgia, did not attend the November 15 meeting. Stafford has never voted these shares and he has stated by affidavit that he does not intend to do so in the future.
In response to the plaintiffs’ objection to the second shareholders’ voting list, Cock- *645 erham, after soliciting the advice of the other directors, adjourned the November 15 meeting, stating that there was a question concerning the accuracy and legality of the shareholders’ voting list and that he and the corporation’s attorney would review the appropriate documents so as to correct any errors pertaining to the ownership of the corporation’s stock. The plaintiffs filed this action on November 22, 1989, seven days after the adjournment of the shareholders’ meeting and six days before the scheduled meeting to elect the directors.
Subsequent to the adjournment of the November 15, 1989, meeting but before the plaintiffs filed their amended complaint on May 10, 1991, Robert Covelli, Donald Wilkes, and Miles Barnett sold their shares in the corporation to Cockerham, Pótate, Mulloy, and Joe Fine, who used their personal funds to make the purchase. It was the corporation’s policy to reserve the first right of refusal when a shareholder wanted to sell his stock. If the corporation, for financial reasons or otherwise, chose not to purchase the stock, it would issue notices to its shareholders advising them that the stock was for sale. Occasionally the corporation would act as a conduit for the sale of its stock between shareholders. This was accomplished by allowing the purchaser to provide the necessary funds to the corporation, which would deposit those funds into its bank account. The corporation would then issue a check to the seller. After the seller’s shares were transferred to the corporation, Peel, who had been granted a limited power of attorney by Stafford to oversee the transfer of stock, would cancel them and issue new stock certificates to the purchaser. Although the corporation was not financially able to, and did not, purchase the shares from Covelli, Wilkes, and Barnett, it was used in the aforementioned manner as a conduit for the transfer of shares between Covelli and Barnett, and Cockerham, Pótate, Mulloy, and Fine. Wilkes did not receive payment for his shares through the corporation. Using the corporation as a conduit for the transfer of shares was a common practice among the corporation’s shareholders.
The plaintiffs’ complaint, as last amended, contains four counts, only three of which are at issue on this appeal. Under the first count, the plaintiffs alleged that Cockerham unlawfully adjourned the November 15 meeting under the “pretext” that there were legitimate questions concerning the validity of the shareholders’ voting list. The plaintiffs also alleged that “any treasury shares reflected on the shareholders’ list ... as well as in [the corporation’s] stock transfer book as it stood on November 1, 1989 (the date of mailing of the notice of the 1989 annual ... shareholders’ meeting), were not entitled to vote at the 1989 ... meeting, or [at] any [meeting reconvened for the purpose of electing directors].” And they further maintained that “Cockerham adjourned [the] meeting solely for the unlawful purpose of retaining his control of the management of [the corporation].” The plaintiffs sought a judgment requiring Cockerham and Peel to issue the necessary notices to the shareholders and to “reconvene the 1989 annual ... shareholders’ meeting.” The plaintiffs also requested that the trial court declare the first shareholders’ voting list to be the proper voting list, subject to the correction of certain “minor” inaccuracies.
Under count two, the plaintiffs alleged that Cockerham, Stafford, Riche, and Larry Landman (a former director of the corporation) breached their fiduciary duties as directors of the corporation in connection with various transactions, including the corporation’s purchase of Stafford’s shares, the corporation’s purchase of a number of shares owned by Cockerham, and an increase in Cockerham’s salary. The plaintiffs sought an accounting for all losses that may have been caused by these alleged improper transactions and a judgment against the defendants on behalf of the corporation. This count was not adjudicated on the defendants’ motion for summary judgment and remains pending below.
Under their third count, the plaintiffs alleged that Cockerham and Peel breached their fiduciary duties to the corporation by conspiring to have the corporation issue its *646 treasury shares to Cockerham, Pótate, Mul-loy, and Fine. The plaintiffs specifically alleged that the shares transferred by Cov-elli, Wilkes, and Barnett to the corporation became treasury shares and that they were issued to Cockerham, Pótate, Mulloy, and Fine for the purpose of solidifying their control over the corporation. The plaintiffs sought a constructive trust for the benefit of the corporation as to the shares transferred by Covelli, Wilkes, and Barnett, as well as damages from Cockerham, Peel, Stafford, and Riche for any losses that may have been caused by the transfer.
Count four of the complaint, which is similar to count three, alleges that Cocker-ham, Peel, Pótate, Mulloy, and Fine conspired to “squeeze out” the plaintiffs by allowing the corporation to issue its treasury shares to Cockerham, Pótate, Mulloy, and Fine. The plaintiffs again alleged that the shares transferred from Covelli, Wilkes, and Barnett to Cockerham, Pótate, Mulloy, and Fine became treasury shares and that the shares were issued so as to solidify their control over the corporation. The plaintiffs sought damages from Cock-erham, Pótate, Mulloy, and Fine[2] for breach of fiduciary duties.
Our standard of review is well established. The summary judgment was proper in this case if there was no genuine issue of material fact and the defendants were entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P. The burden was on the defendants to make a prima facie showing that no genuine issue of material fact existed and that they were entitled to a judgment as a matter of law. If that showing was made, then the burden shifted to the plaintiffs to present evidence creating a genuine issue of material fact, so as to avoid the entry of a judgment against them. In determining whether there was a genuine issue of material fact, we must view the evidence in the light most favorable to the plaintiffs and must resolve all reasonable doubts against the defendants. Knight v. Alabama Power Co., 580 So.2d 576 (Ala.1991). Because this case was not pending on June 11, 1987, the applicable standard of review is the “substantial evidence” rule. Ala. Code 1975, § 12-21-12.
The gist of the plaintiffs’ allegations under counts one, three, and four is that Cockerham conspired with the other individual defendants to unlawfully prevent the plaintiffs from exercising their voting rights at the November 15, 1989, shareholders’ meeting. This was accomplished, according to the plaintiffs, when Cocker-ham adjourned the November 15 meeting without justification so that he and the other defendants, primarily Pótate, Mulloy, and Fine, would have additional time in which to solidify their control of the corporation and that the defendants attempted to do’ this by purchasing the corporation’s treasury shares. The defendants contend that there is no evidence that any of them engaged in a conspiracy to unlawfully maintain control of the corporation or to squeeze the plaintiffs out of the corporation.
After carefully reviewing the record and the briefs of the parties, we agree with the defendants that the summary judgment was proper.[3] The plaintiffs refer to the *647 allegation in their complaint that Cocker-ham adjourned the November 15 meeting under the “pretext” that there was a legitimate question concerning the accuracy of the shareholders’ voting list, but they cite us to no evidence in the record that would support an inference that the meeting was illegally adjourned. From all that appears in the record, one would conclude that Cockerham adjourned the November 15 meeting because a disagreement arose as to the validity of the shareholders’ voting list. Virginia law governs the corporation’s internal affairs. See Ala. Code 1975, § 10-2A-226, which provides in part as follows:
“A foreign corporation shall not be denied a certificate of authority [to transact business in this state] by reason of the fact that the laws of the state or country under which such corporation is organized governing its organization and internal affairs differ from the laws of this state, and nothing in this chapter contained shall be construed to authorize this state to regulate the organization or the internal affairs of such corporation.”
Cockerham’s adjournment of the meeting was authorized under Va. Code Ann., § 13.1-661 (Michie 1989), which provides:
“Shareholders’ list for meeting. A. The officer or agent having charge of the share transfer books of a corporation shall make, at least ten days before each meeting of shareholders, a complete list of the shareholders entitled to vote at such meeting or any adjournment thereof, with the address of and the number of shares held by each. The list shall be arranged by voting group and within each voting group by class or series of shares.
“B. For a period of ten days prior to the meeting, the list of shareholders shall be kept on file at the registered office of the corporation or at its principal office or at the office of its transfer agent or registrar and shall be subject to inspection by any shareholder at any time during usual business hours. Such list shall also be produced and kept open at the time and place of the meeting and shall be subject to the inspection of any shareholder during the whole time of the meeting for the purposes thereof. The original share transfer books shall be prima facie evidence as to who are the shareholders entitled to examine such list or transfer books or to vote at any meeting of shareholders. The right of the holder of shares of a corporation any of whose securities are registered under the Securities Exchange Act of 1934, as amended, to inspect such list prior to a meeting of shareholders shall be subject to the limitations set forth in subsection C of § 13.1-771.
“C. If the requirements of this section have not been substantially complied with, the meeting shall, on the demand of any shareholder in person or by proxy, be adjourned until the requirements are complied with. Refusal or failure to prepare or make available the shareholders’ list does not affect the validity of action taken at the meeting prior to the making of any such demand, but any action taken by the shareholders after the making of any such demand shall be invalid and of no effect.”
*648 (Emphasis added.) Therefore, Coekerham and Peel made a prima facie showing that no genuine issue of material fact existed as to count one and that they were entitled to a judgment as a matter of law as to that count. The plaintiffs did not present evidence creating a genuine issue of material fact. The trial court properly entered the summary judgment as to count one.
Furthermore, although the definitions section of Va.Code Ann., § 13.1-603, does not define “treasury shares,” § 13.1-652 states that “[a] corporation may acquire its own shares” and that “shares so acquired constitute authorized but unissued shares of the same class, but undesignated as to series.”[4] The undisputed evidence shows that the corporation in the present case did not acquire any of its previously issued shares from Covelli, Wilkes, and Barnett. Coekerham, Pótate, Mulloy, and Fine purchased those shares with their own funds; no corporate funds were involved in the transaction. Pursuant to an ongoing practice, the corporation was merely used as a conduit for the transfer of shares between Covelli and Barnett, and Cocker-ham, Pótate, Mulloy, and Fine. The trial court correctly concluded that the shares transferred by Covelli, Wilkes, and Barnett did not become treasury shares of the corporation. Therefore, because Coekerham, Peel, Stafford, Riche, Pótate, and Mulloy made a prima facie showing that no genuine issue of material fact existed as to counts three and four and that they were entitled to a judgment as a matter of law as to those counts, and because the plaintiffs presented no, evidence creating a genuine issue of material fact as to those counts, the trial court properly entered the summary judgment as to counts three and four.
For the foregoing reasons, the judgment is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES, KENNEDY and INGRAM, JJ., concur.

, The summary judgment did not relate to count two; the judgment was made final pursuant to Rule 54(b), Ala.R.Civ.P.

. The record does not indicate that the claims made against Fine in counts three and four were adjudicated on a motion for summary judgment. We assume, therefore, that those claims remain pending below.

. We note the plaintiffs’ contention that the trial court violated the 10-day notice requirement of Rule 56(c), A.R.Civ.P. However, the record shows that the plaintiffs filed their initial complaint on November 22, 1989. The allegations in that complaint were substantially the same as those set out in counts one and two of the plaintiffs’ amended complaint, which was filed on May 10, 1991. The corporation, Cockerham, Peel, Stafford, Riche, and Landman, the defendants named in the original complaint, filed a motion for summary judgment on March 2, 1990. After the plaintiffs filed their amended complaint on May 10, 1991, adding Pótate, Mul-loy, and Fine as defendants and seeking relief as to all the individual defendants, except Land-man, under count three and all the individual defendants, except Peel, under count four, the corporation, Cockerham, Peel, Stafford, Riche, and Landman filed an amended motion for summary judgment on May 22, 1992. Pótate filed his motion for summary judgment on May 13, 1992. Mulloy filed his motion on June 16, 1992. A hearing on the motions was held on June 22, 1992, and the judgment was entered that same day. Although Peel filed a motion on *647 June 17, 1992, specifically seeking a summary judgment as to count three of the amended complaint, it appears from our review of the record that that motion basically duplicated the May 22, 1991, motion for summary judgment. Therefore, it appears as though Mulloy’s was the only motion filed within 10 days of the hearing. However, a judgment entered in violation of the 10-day notice rule does not constitute an abuse of discretion on the trial court’s part unless it worked to the prejudice of the nonmoving party. Hilliard v. SouthTrust Bank of Alabama, N.A., 581 So.2d 826 (Ala.1991). The record in the present case shows that the trial court correctly determined at the June 22, 1992, hearing that Pótate was entitled to a summary judgment because the shares that he had purchased from Covelli, Wilkes, and Barnett were not treasury shares of the corporation. The basis for the plaintiffs' claims against Mulloy was exactly the same as the basis for their claims against Pótate. The record does not indicate that the plaintiffs were prevented from submitting whatever evidence they had to prove that Pótate, Mulloy, and Fine had purchased the corporation’s treasury shares or that they were otherwise prejudiced by the entry of a summary judgment for Mulloy on June 22.

. "Treasury shares” are defined in Black’s Law Dictionary (6th ed. 1990), as shares that "have been issued as fully paid to shareholders and subsequently reacquired by the corporation to be used by it in furtherance of its corporate purposes" and "shares which have been reacquired by [a] corporation, but not cancelled and restored to [the] status of authorized but unissued shares and which occupy [the] status of issued but not outstanding shares.”