COBB, Chief Justice.
Bentley Systems Incorporated (“BSI”), a Delaware corporation based in Pennsylvania, and Gregory S. Bentley, Keith A. Bentley, Barry J. Bentley, Raymond B. Bentley, and Richard P. “Scott” Bentley (“the Bentley brothers”), residents of Pennsylvania and the defendants in the underlying action, petition this Court for a writ of mandamus instructing the Madison Circuit Court to vacate its order denying their motion to dismiss the action or, in the alternative, to stay the proceedings in the underlying action or to enter an order dismissing the action without prejudice. The plaintiffs in the underlying action, Cobalt BSI Holding, L.L.C. (“Cobalt”), a Delaware limited-liability company based in Nevada, and Intergraph Corporation (“In-tergraph”), a Delaware corporation based in Alabama, sued the defendants in the Madison Circuit Court on November 26, 2008, both directly and derivatively as shareholders of BSI. The action challenged an incentive-compensation plan between the plaintiffs and the defendants and alleged, among other things, that the Bentley brothers were operating BSI as their corporate “alter ego.” The relief sought includes the permanent removal of the Bentley brothers from any managerial or directorial position at BSI. On the same day the underlying action was filed in Alabama, Cobalt fíled a complaint against BSI and the Bentley brothers in the Delaware Chancery Court asserting similar claims and allegations and seeking similar relief; the Delaware action also sought an inspection of BSI’s corporate books and records under Delaware business law.
On January 16, 2009, the plaintiffs filed a motion in the Alabama action seeking a preliminary injunction enjoining any further distribution of profits of BSI to the Bentley brothers. Also on January 16, BSI and the Bentley brothers filed an action in Delaware seeking a judgment declaring the law as to the same issues raised in the Alabama action. In light of their Delaware action, BSI and the Bentley brothers subsequently filed a motion to dismiss the Alabama action pursuant to Ala.Code 1975, § 6-5-430, on the ground that Delaware was a more appropriate forum. Section 6-5-430 states:
“Whenever, either by common law or the statutes of another state or of the United States, a claim, either upon contract or in tort has arisen outside this state against any person or corporation, such claim may be enforceable in the courts of this state in any county in which jurisdiction of the defendant can be legally obtained in the same manner in which jurisdiction could have been obtained if the claim had arisen in this state; provided, however, the courts of this state shall apply the doctrine of forum non conveniens in determining whether to accept or decline to take jurisdiction of an action based upon such claim originating outside this state; and provided further that, if upon motion of any defendant it is shown that there *1066 exists a more appropriate forum outside this state, taking into account the location where the acts giving rise to the action occurred, the convenience of the parties and witnesses, and the interests of justice, the court must dismiss the action without prejudice. Such dismissal may be conditioned upon the defendant or defendants filing with the court a consent (i) to submit to jurisdiction in the identified forum, or (ii) to waive any defense based upon a statute of limitations if an action on the same cause of action is commenced in the identified forum within 60 days of the dismissal.”
The Bentley brothers also asserted that they should be dismissed as defendants in the Alabama action because, they say, the Alabama court lacked personal jurisdiction over them.
The genesis of the underlying action was Intergraph’s 1987 acquisition of a 50% interest in BSI by way of a stock-purchase agreement. Keith, Barry, Raymond, and Scott Bentley transferred one-half of BSI’s then extant stock to Intergraph in exchange for Intergraph stock worth $3 million. At least a portion of that transaction took place in Alabama. Intergraph subsequently transferred its BSI stock to Inter-graph Properties Company in 2002, and Cobalt, also an Intergraph affiliate, acquired that stock in 2006. Cobalt remains the largest single shareholder of BSI stock. Intergraph Properties merged with Intergraph in 2008.
In addition to the stock-purchase agreement, Intergraph and BSI entered into contracts for the sale and licensing of software products that have already resulted in two earlier opinions by this Court: Bentley Systems, Inc. v. Intergraph Corp., 922 So.2d 61 (Ala.2005) (“Bentley I ”), and Intergraph Corp. v. Bentley Systems, Inc., [Ms. 1080300, March 12, 2010] — So.3d -(Ala.2010) (“Bentley II”). Although all the facts of those complex cases are not relevant to Qie issues presented here, a brief review of those facts provides some insight into the relationships of the parties. In Bentley I, the Court noted that Inter-graph had sold, by way of an asset-purchase agreement, engineering-design software products to Bentley[1] for Bentley to develop and market to engineering, architectural, and design companies; the agreement encompassed the conveyance of various software products and the associated maintenance agreements. Disputes over the contractual responsibilities and liabilities of the parties resulted in Intergraph’s filing a declaratory-judgement action against Bentley in the Madison Circuit Court, following which Bentley filed a counterclaim against Intergraph. After a review of the voluminous evidentiary submissions, the trial court eventually entered a judgment declaring that Intergraph was owed in excess of $7.5 million on the contractual agreements and denying Bentley the relief it sought in its counterclaim. Bentley appealed, and Intergraph cross-appealed. This Court reversed the trial court’s judgment, holding, among other things, that the many factual disputes in the case were not subject to resolution by evidentiary submissions without live testimony and remanding the cause to the trial court for further proceedings.
In Bentley II, this Court summarized the proceedings in the trial court on remand:
“On remand, the trial court referred all disputed issues to a special master. The special master conducted proceed *1067 ings in three separate phases and heard live testimony from a number of witnesses. The special master submitted a report in which he concluded that the principal value of the promissory note (‘the note’) should be adjusted to $22,295,456; counting payments already made and cash adjustments awarded to Intergraph, the special master determined that Bentley owed Intergraph an additional $1,539,744, including $500,000 in retroactive interest, on the note. The special master awarded Bentley $2,226,486 on its breach-of-contract counterclaim for lost profits. He concluded that Intergraph was entitled to indemnification from Bentley for legal expenses totaling $6,636,144.20; he concluded that Bentley was entitled to indemnification from Intergraph for legal expenses totaling $5,731,077.98. The net result of all the special master’s rulings was that, on balance, Bentley must pay Intergraph $279,733.”
— So.3d at-. The trial court entered an order adopting the special master’s findings; Intergraph appealed and Bentley cross-appealed. After an extensive analysis of the facts and legal issues governing the contractual agreements between Inter-graph and Bentley, the Court held:
“We find that the trial court erred in accepting the special master’s calculation of damages regarding Bentley’s counterclaim because that calculation failed to include the cost of the increased value of the note in establishing Bentley’s lost-profits damages, and we reverse the judgment in that respect. We also reverse the trial court’s judgment insofar as it fails to award Bentley lost-profits damages for years two through five. In all other respects, the judgment of the trial court is due to be affirmed. We remand the case to the trial court for it, either with or without the assistance of the special master to hear argument from the parties and to enter a judgment consistent with this opinion.”
— So.3d at -. Thus, litigation between Intergraph and BSI continues on the contracts involving the purchase of Intergraph’s software products.
The claims underlying this petition are Intergraph’s assertions that after the software licenses that granted Intergraph a license to distribute BSI’s “Microstation” software product expired in 1995 — and with them the “Royalty Payment Bonus Plan” that resulted in a 20% payment of Intergraph’s royalty payments directly to the Bentley brothers as incentive compensation — the Bentley brothers wrongfully began distributing 20% of BSI’s pre-tax profits among themselves. Intergraph and Cobalt assert that the effect of this action by the Bentley brothers has been to remove from BSI approximately $59.5 million in profits that were due to be divided among all BSI shareholders.[2] Thus, the plaintiffs assert that the Bentley brothers breached their fiduciary duties to BSI’s corporate shareholders and fraudulently suppressed information about their “bonus” plan. The plaintiffs further assert that the Bentley brothers operate BSI as their “alter ego,” without regard to the corporate board of directors or the rights of the other shareholders.
On May 6, 2009, the trial court denied the defendants’ motion to dismiss, after considering voluminous evidentiary materials[3] and briefings as well as conducting hearings on the issues of forum non conve- *1068 niens and personal jurisdiction; that order does not supply a rationale for its denial. BSI and the Bentley brothers (“the petitioners”) assert that they are entitled to a writ of mandamus requiring the dismissal of Cobalt and Intergraph’s action in this state on three different grounds: (1) that the doctrine of forum non conveniens favors maintaining such an action in Delaware, (2) that an Alabama court may not interfere with the internal affairs of a Delaware corporation, and (3) that the Alabama court has no personal jurisdiction over the Bentley brothers.
Each of these arguments must be considered in light of the overarching standard of review:
“A writ of mandamus is an extraordinary remedy, and it will be ‘issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.’ Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993). A writ of mandamus will issue only in situations where other relief is unavailable or is inadequate, and it cannot be used as a substitute for appeal. Ex parte Drill Parts & Serv. Co., 590 So.2d 252 (Ala.1991). It is well settled that ‘a writ of mandamus will not issue to review the merits of an order denying a motion for a summary judgment.’ Ex parte Central Bank of the South, 675 So.2d 403, 406 (Ala.1996).”
Ex parte Empire Fire & Marine Ins. Co., 720 So.2d 893, 894 (Ala.1998). See also Ex parte Synovus Trust Co., 41 So.3d 70 (Ala.2009).
I. Forum Non Conveniens
The petitioners first argue that the trial court exceeded its discretion in denying their motion to dismiss because, they say, Ala.Code 1975, § 6-5-430, requires the dismissal of the Alabama action under the doctrine of forum non conveniens. This Court recently discussed the general considerations that govern when the doctrine of forum non conveniens applies in a case involving an out-of-state party:
“‘The purpose of the doctrine of forum non conveniens is to “prevent the waste of time, energy, and money and also to protect witnesses, litigants, and the public against unnecessary expense and inconvenience.’” Ex parte Perfection Siding, Inc., 882 So.2d 307, 312 (Ala.2003) (quoting Ex parte New England Mut. Life Ins. Co., 663 So.2d 952, 956 (Ala.1995)). Under § 6-5-430 a trial court must dismiss an action without prejudice ‘if, upon motion of a defendant, it is shown that there exists a more appropriate forum outside the state, taking into account the location where the acts giving rise to the action occurred, the convenience of the parties and witnesses, and the interest of justice. ...’ Ex parte Prudential Ins. Co. of America, 721 So.2d 1135, 1138 (Ala.1998).”
Ex parte DaimlerChrysler Corp., 952 So.2d 1082, 1087 (Ala.2006). In Daimler-Chrysler the Court considered the claim of the administrator of a decedent’s estate who sought wrongful-death damages under Utah law as the result of an automobile accident that had occurred in Utah. The only connection to Alabama was the fact that the vehicle had been purchased in this State. After considering all the circumstances of the case, including the availability of witnesses who had seen the accident and who had treated the decedent’s injuries, the Court concluded that the doctrine of forum non conveniens required the dismissal of the action. In its analysis, the Court noted a feature of the doctrine of *1069 forum non conveniens under § 6-5-430 that is particularly applicable to the instant situation. That is, the Court in Da-imlerChrysler approved the parties’ concession that in order for the doctrine of forum non conveniens to apply, all the plaintiffs claims in the underlying lawsuit must meet the forum non conveniens criteria of § 6-5-430.
A second consideration in the application of the doctrine of forum non con-veniens is that factual determinations are generally left to the sound discretion of the trial court. See, e.g., Vulcan Materials Co. v. Alabama Ins. Guar. Ass’n, 985 So.2d 376, 381 (Ala.2007) (“ ‘The determination of the situs of the claim — either inside or outside the State of Alabama — is a factual determination left to the sound discretion of the trial court.’ ” (quoting Ex parte Ford Motor Credit Co., 561 So.2d 244, 246 (Ala.Civ.App.1990)); Malsch v. Bell Helicopter Textron, Inc., 916 So.2d 600 (Ala.2005) (trial court acted within its discretion in determining, under the facts of that case, that the plaintiffs-crewmem-bers’ action was not barred by the expiration of the limitations period); and Donald v. Transport Life Ins. Co., 595 So.2d 865 (Ala.1992) (the decision whether to dismiss an action on the basis of the doctrine of forum non conveniens is within the trial court’s discretion). The principle that this Court will defer to the trial court’s discretion with regard to factual determinations has particular weight when the petitioners are seeking mandamus relief and must establish a “clear legal right” to that relief in order to prevail. Empire Fire & Marine Ins. Co., supra.
Intergraph and Cobalt’s evidentia-ry submissions demonstrate that BSI maintains a large office in Alabama that employs over 120 people and that more than 130 BSI shareholders reside in Alabama. Intergraph and Cobalt have also provided submissions to show that BSI has held board meetings in Alabama and that at those meetings Intergraph representatives asked about the incentive-bonus plan that is one of the issues in the underlying action. Intergraph and Cobalt also show that the petitioners distributed financial statements to Intergraph in Alabama that, they say, misrepresented material facts about BSI’s stock and suppressed information about the incentive-bonus plan. In addition to their claims of shareholder oppression, Intergraph and Cobalt contend that the petitioners violated the Alabama Securities Act, § 8-6-1 et seq., Ala.Code 1975, in their representations concerning BSI stock.
With respect to the statutory forum non conveniens factors of § 6-5-430 (“the location where the acts giving rise to the action occurred, the convenience of the parties and witnesses, and the interests of justice”), Intergraph and Cobalt also call this Court’s attention to the history of litigation in this State involving BSI. The facts also show that Intergraph is based in Alabama and has its home office here and that the vice president and general counsel of Cobalt resides in Madison County, Alabama. In response, the petitioners assert that Delaware is the more appropriate forum for the adjudication of this dispute because all the corporate parties to the dispute are incorporated under Delaware law. We note, however, that there is no evidence to support an inference that any of the acts that gave rise to this dispute occurred in Delaware, and there is no indication that any party or witness in this litigation is a resident of Delaware. In addition to the history of transactions between the parties reflected in the earlier cases involving Intergraph and BSI, Inter-graph and Cobalt presented evidence indicating that the Bentley brothers control BSI and distribute the profits of BSI sole *1070 ly among themselves and that BSI makes no distribution of profits to any other minority shareholder. We conclude that the trial court could reasonably have concluded that one or more of Intergraph and Cobalt’s claims against the petitioners arose in this State. Such a conclusion would dictate that § 6-5-430 would not apply to this case. DaimlerChryler, supra. Moreover, a review of the applicable statutory factors persuades us that the petitioners have not demonstrated a clear legal right to have the underlying action dismissed on the ground of forum non conveniens, nor have they shown that the trial court exceeded its discretion in denying their motion to dismiss.
II. The Internal-Affairs Doctrine
The “internal-affairs doctrine” is the long-recognized principle that “‘[t]he courts of one state have no visitorial power over the corporations of another state in matters of vital concern to internal policy and management....’” Ellis v. Mutual Life Ins. Co. of New York, 237 Ala. 492, 504, 187 So. 434, 444 (1939)(quoting Hoglan v. Moore, 219 Ala. 497, 501, 122 So. 824, 828 (1929)). Thus, the Court in Ellis held that an action seeking a judgment declaring the manner in which Mutual Life Insurance Company of New York, a New York corporation, was to distribute its dividends was not appropriate for adjudication by an Alabama court. In more recent precedent the internal-affairs doctrine has come to imply that litigation in Alabama concerning some aspect of corporate governance must defer to the law of the state of incorporation. For example, in Massey v. Disc Manufacturing, Inc., 601 So.2d 449 (Ala.1992), this Court considered claims of the usurpation of corporate opportunity. The Court quoted as a basis for its analysis the “established rule of conflicts law” that “ ‘the internal corporate relationship is governed by the law of the state of incorporation.’ ” 601 So.2d at 454 (quoting P. John Kozyris, Corporate War and Choice of Law, 1985 Duke L.J. 1,15). The Court implied that it was appropriate for an Alabama court to adjudicate the fiduciary duties of the directors in question so long as the court applied the law of the state of incorporation. However, in Massey, the Court determined that the complainants — the minority shareholders — had failed to meet the contractual prerequisites for bringing their claim of breach of fiduciary duty and so reversed the judgment of the trial court.
Although not a state-law case, the bankruptcy case of In re Chalk Line Manufacturing, Inc., (Bankr.No. 93-42773, Adv. No. 94-10003, July 26, 1994) (Bankr.ND.Ala.1994) (not published in Bankruptcy Reporter), considered an analogous factual context regarding minority-shareholder complaints of oppression and breach of fiduciary duty and provided a scholarly discussion of the state of Alabama law concerning the internal-affairs doctrine in an analogous factual context. Judge James S. Sledge, writing for the United States Bankruptcy Court, stated:
“In Alabama, the law of the state of incorporation governs the internal corporate relationship. Massey v. Disc Mfg., Inc., 601 So.2d 449 (Ala.1992). The Alabama Code authorizes and regulates foreign corporations doing business within the state. Ala.Code § 10-2A-225, et seq. (Michie 1975). The statute specifically refuses any authority to Alabama ‘to regulate the organization or the internal affairs of a foreign corporation. Ala.Code § 10-2A-226 (Michie 1975). The plaintiffs and defendants hold shares in Chalk Line, Inc., a Delaware corporation!;] therefore, Delaware corporate law governs the resolution of their dispute.
*1071 “Alabama courts have long adhered to the internal affairs doctrine in choosing the appropriate state’s law. In Boyette v. Preston Motors Corporation, 206 Ala. 240, 89 So. 746 (1921), the court held that the laws of Delaware regulated the relationship among stockholders in a corporation formed under the laws of that state. The court concluded that a stockholder subjects himself to the laws of the state of incorporation upon assuming the relations of a stockholder. Boyette, 206 Ala. at 244.
“The Alabama court defined ‘internal affairs’ in Ellis v. Mutual Life Ins. Co., 237 Ala. 492, 187 So. 434 (1939), as follows:
“ ‘where the act complained of affects the complainant solely in his capacity as a member of the corporation, whether it be as stockholder, director, president, or other officer, and is the act of the corporation, whether acting in stockholders meeting, or through its agent, the board of directors, that then such action is the management of the internal affairs of the corporation.’
“Ellis, 237 Ala. at 502. The Alabama court has applied the internal affairs doctrine on numerous occasional since it decided Ellis, but has not undertaken further definition of the rule. Other courts, however, have elaborated on the scope of ‘internal affairs.’ For example, in McDermott Incorporated v. Lewis a Delaware court stated that ‘this doctrine governs the choice of law determinations involving matters peculiar to corporations that is those activities concerning the relationships inter se of the corporation its directors, officers and shareholders.’ 531 A.2d 206, 214 (Del.1987).
“Although Alabama precedent establishes that the internal affairs doctrine is the rule on choice-of-law in Alabama, the Alabama courts have never specifically addressed whether the doctrine applies to a majority shareholder’s breach of duty to the minority. Two ease[s] in which the Alabama court might have decided the issue fail to provide a clear answer, and in fact, suggest contradictory results: Stroud v. John M. Cockerham & Assoc., 620 So.2d 643 (Ala.1993), and Galbreath v. Scott, 433 So.2d 454 (1983).
“Arguably, the Alabama courts have indicated an intent to apply the internal affairs doctrine in determining the liability of majority shareholders. In Stroud v. John M. Cockerham & Assoc., 620 So.2d 643 (Ala.1993), the plaintiffs, minority shareholders in a Virginia corporation with its principal place of business in Huntsville, Alabama, sued the majority shareholders. The plaintiffs alleged, among other things, that the majority shareholders breached their fiduciary duty in conspiring to ‘squeeze out’ the minority shareholders. Id. at 646. The alleged ‘squeeze out’ involved a transfer of shares from one group of shareholders to another. Id. The plaintiffs claimed that the transaction involved a wrongful issue of treasury shares. Id. The court concluded, however, that the undisputed evidence showed that the purchase of shares did not involve corporate funds and that the corporation merely served as a conduit. Id. at 648
“The Stroud court cited only Virginia law in its opinion after determining that Ala.Code § 10-2A-226 required that Virginia law govern the corporation’s internal affairs. Id. at 647 (citing Ala. Code § 10-2A-226 (Michie 1975)). The court did not, however, specifically address the issue of whether the internal affairs doctrine applied to claims for breach of fiduciary duty. The court applied a Virginia statute defining the authority of a corporation to purchase its shares, but concluded that the corpora *1072 tion did not purchase any shares Id. at 648. The Stroud court’s application of Virginia law in this case suggests that the court would have resolved the issue of fiduciary breach with reference to Virginia law if the plaintiff had established evidence to support its allegations. As the court did not reach the issue of breach, however, the case provides only suggestive authority.
“Galbreath v. Scott, 433 So.2d 454 (1983), suggests, but again does not authoritatively prescribe, an opposite result. In Galbreath, the minority shareholder in a Florida corporation sued the majority shareholder. Although the Galbreath court denied the minority shareholder individual recovery on grounds that the complaint stated claims which could only be asserted derivatively, the court discussed the trend in Alabama toward drawing distinctions between closely and widely-held corporations in the treatment of minority shareholder’s claims of fiduciary breach by the majority. Id. at 457 (citing Burt v. Burt Boiler Works, Inc., 360 So.2d 327 (Ala.1978)[) ]. The court did not discuss choice-of-law. The Galbreath decision suggests that the Alabama court might apply Alabama law in determining the liability of a majority shareholder to the minority. But again, the court has not definitively answered the question.
“Although the Alabama courts have not yet analyzed whether the law of the state of incorporation applies to the determination of the duty majority shareholder’s [sic] owed the minority, this Court believes that the Alabama court would follow the Restatement (Second) of Conflict of Laws as that court has applied the Restatement’s choice-of-law rules in similar situations involving corporations. See International Insurance Co. v. Johns, 874 F.2d 1447, 1458, n. 19 (11th Cir.1989) (holding that where Florida state court had not addressed choice-of-law issues with regard to director’s liability, federal court could presume that Florida court would follow the Restatement (Second) of Conflict of Laws based on the Florida court’s past reliance on the treatise).
“In Massey v. Disc Mfg., Inc., 601 So.2d 449 (Ala.1992), the court cited Restatement (Second) of Conflict of Laws § 309 (1971), in concluding that Delaware law should determine the extent of a director’s liability to a Delaware corporation. The Restatement likewise provides the rule for determining choice-of-law issues involving the liability of majority shareholders to minority shareholders and the corporation. Restatement (Second) of Conflict of Laws § 306 (1971) provides:
“ ‘The obligations owed by a majority shareholder to the corporation and to the minority shareholders will be determined by the local law of the state of incorporation, except in the unusual case where, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the parties and the corporation, in which event the local law of the other state will be applied.’
“The court in Massey cited to comment (c) to § 309 which states:
“ ‘Issues relating to the validity of such acts, and to any resulting liability on the part of the directors and officers, cannot practicably be determined differently in different states. It would be impracticable, for example, for a share issue or declaration of dividends to be valid in one state and invalid in another. In the absence of a statute to the contrary, the local law of the state of incorporation -will be *1073 applied in the great majority of instances to determine issues of this sort. The local law of some state other than that of incorporation should not be applied to determine such issues unless this other state has an interest that is superior to that of all other states in the issue to be decided or unless, for reasons explained in Comment g of § 302, its local law rule is the same as that prevailing in many of the other states in which the corporation does business or has shareholders. The local law of some state other than the state of incorporation is most likely to be applied to determine issues of this sort in a situation where the corporation does all, or nearly all, of its business and has most of its shareholders in this other state and has little contact, apart from the fact of its incorporation, with the state of incorporation.’
‘“Within the second category fall acts, such as seizing a corporate opportunity or causing the making of a contract or the commission of a tort. Issues relating to the liability of the directors and officers for acts such as these can practicably be decided differently in different states. It would be practicable, for example, for a director to be held liable for a given act in one state and to be held not liable for an identical act in another state. Nevertheless, in the absence of an applicable local statute, the local law of the state of incorporation has usually been applied to determine the liability of the directors or officers for acts such as these to the corporation, its creditors and shareholders. This law has usually been applied even in a situation where it might be thought that some other state had a greater interest than the state of incorporation in the issue to be determined. The local law rule of a state other than the state of incorporation is most likely to be applied in a situation where this rule embodies an important policy of the other state and where the corporation has little contact with the state of its incorporation.’
“601 So.2d 449, 454-55 (Ala.1992).
“The court’s adoption of the Restatement’s rationale that a director should not be held liable for an act in one state that would not create liability in another state, indicates that the court would adopt the similar rationale cited in comment (c) to § 306 applicable to determining the liability of majority shareholders.
“ ‘In the absence of an applicable local statute, the local law of the state of incorporation will be applied in the great majority of instances to determine issues covered by the present rule. This is partly for the reason that these issues are of the sort which cannot satisfactorily be determined differently in different states. It would seem wrong, for example, to hold that a majority shareholder owes a fiduciary obligation to one shareholder under the local law of state X but does not owe such an obligation to a shareholder of the same class under the local law of state Y. As a result, the local law of some state other than the state of incorporation should not be applied to determine such issues unless this other state has an interest that is clearly superior to that of all other states in the issue to be decided or unless, for reasons explained in Comment g of § 302, its local law rule is the same as that prevailing in many of the other states in which the corporation does business or has shareholders. The local law of some state other than the state of incorporation is most likely to be applied in a situation where the corporation does all, or nearly all, of its business and has most of its shareholders in that other state *1074 and has little contact, apart from the fact of its incorporation, with the state of incorporation.’
“Restatement (Second) of Conflict of Laws § 306 cmt. c (1971).
“Although the Restatement would under some circumstances allow a court to apply the law of a state other than the state of incorporation, the comments suggest that this exception to the general rule is narrowly drawn and would not apply to a corporation doing business in many states and abroad. Id. The plaintiffs have presented the Court with no persuasive arguments for abandoning a general rule which is consistent with long-standing Alabama case law, the United States Constitution, and public policy.”
(Footnote omitted.)
Although we note with approval the Bankruptcy Court’s discussion in Chalk Line, we need not go so far as to adopt its entire rationale. Rather, in the context of this case, we hold that the “internal-affairs doctrine” as applied in this State does not deprive the trial court of jurisdiction over the claims in the underlying action, nor does it require the trial court to dismiss the instant action in deference to litigating those claims in Delaware. Thus, the internal-affairs doctrine cannot serve as the basis for a clear legal right for the writ of mandamus sought by BSI and the Bentley brothers. Rather, where the underlying claims implicate issues of corporate governance, the trial court will be constrained to apply the corporate law of Delaware. Further, we believe that the discussion from Challc Line will provide a useful reference for the application of Alabama law to claims that may not implicate corporate governance, such as suppression.
III. Personal Jurisdiction
The Bentley brothers further assert that they have a clear legal right to a writ of mandamus ordering the dismissal of the underlying action as to them, because, they say, the trial court lacks personal jurisdiction over them. Generally, the question whether a trial court has properly denied a motion to dismiss on grounds of lack of personal jurisdiction presents a question of law to be considered de novo by the appellate courts. Leithead v. Banyan Corp., 926 So.2d 1025 (Ala.2005).
“ ‘ “A physical presence in Alabama is not a prerequisite to personal jurisdiction over a nonresident.” Sieber v. Campbell, 810 So.2d 641, 644 (Ala.2001). What is required, however, is that the defendant have such contacts with Alabama that it “ ‘should reasonably anticipate being haled into court [here].’ ” Dillon Equities v. Palmer & Cay, Inc., 501 So.2d 459, 462 (Ala.1986) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).
“ ‘Depending on the quality and quantity of the contacts, jurisdiction may be either general or specific. Leventhal v. Harrelson, 723 So.2d 566, 569 (Ala.1998). “General jurisdiction applies where a defendant’s activities in the forum state are ‘substantial’ or ‘continuous and systematic,’ regardless of whether those activities gave rise to the lawsuit....
“ ‘But regardless of whether jurisdiction is alleged to be general or specific, the nexus between the defendant and the forum state must arise out of “ ‘an action of the defendant [that was ] purposefully directed toward the forum State.’ ” Elliott [v. Van Kleef, 830 So.2d 726, 731 (Ala.2002) ] (quoting Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). “This purposeful-availment requirement assures that a defendant will not be haled into a juris *1075 diction as a result of ‘ “the unilateral activity of another person or a third person.” ’ ” Elliott, 830 So.2d at 731 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).’ ”
Leithead, 926 So.2d at 1030-31 (quoting Ex parte Dill, Dill, Carr, Stonbraker & Hutchings, P.C., 866 So.2d 519, 525-26 (Ala.2003)).
The Bentley brothers assert that they do not reside in Alabama and that their previous business dealings in this State are stale because such activities as the drafting of the business agreements with Intergraph occurred more than 10 years before the filing of the underlying action. The Bentley brothers also assert that their contacts with this State are only intermittent and occasional and do not qualify as the sort of “continuous or systematic” contact that would support the exercise of personal jurisdiction over them by a court in Alabama. In reply, Inter-graph and Cobalt note the evidence presented to the trial court indicating that the Bentley brothers have sent many thousand written and electronic communications to Alabama in the furtherance of their interests in BSI; that they have made numerous telephone calls to and participated in telephone conferences in this State; and that they have traveled to this State on many occasions.
Moreover, it is also apparent that the Bentley brothers have been substantially involved in the prior litigation concerning BSI and Intergraph in this State, including the litigation concerning the software-purchase agreement between BSI and Inter-graph that originally involved some $3 million in company stock. As is evident from the litigation history detailed in Bentley II, supra, that stock transaction remains the basis of ongoing litigation as well as being a significant factor in the claim in the underlying case. That is, the ownership of BSI stock by the Bentley brothers retained as a result of the original stock-purchase agreement discussed in Bentley I constituted the ownership interest that In-tergraph and Cobalt claim resulted in the Bentley brothers’ wrongful activities. Among the instances when the Bentley brothers personally traveled to Alabama were the various user conferences held by Intergraph for the purpose of demonstrating and developing the various software products relevant to Intergraph and BSI’s business pursuits. Further, the materials before the Court reveal that BSI’s second largest office is located in Madison County, Alabama, and in 2007 that office employed more than 120 individuals with an annual payroll in excess of $11 million; the record contains evidence from which the trial court could have reasonably inferred that the Bentley brothers personally exercised significant direct control over the operations of that office. Under all the circumstances, we conclude that the Bentley brothers had such contacts with Alabama that they “should reasonably anticipate being haled into court [here].” World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).
We conclude that the Bentley brothers have failed to show the requisite clear legal right to a dismissal based on the lack of personal jurisdiction. Empire Fire & Marine Ins. Co., supra. Accordingly, the petition for the writ of mandamus is denied.
PETITION DENIED.
LYONS, WOODALL, STUART, SMITH, BOLIN, PARKER, and SHAW, JJ., concur.
MURDOCK, J., concurs in the result.

. The term "Bentley” as used in both Bentley I and Bentley II referred to BSI and Bentley Systems Europe B.V.

. BSI’s revenue is approximately $400 million annually.

. The parties produced more than 41,000 pages of documentary evidence in discovery directed toward the questions of jurisdiction and the appropriateness of the forum.